**CLAYTON v. KERBEY et ux.    (No. 6252.)**

(Court of Civil Appeals of Texas. Austin.
Dec. 8, 1920. Rehearing Denied
Jan. 19, 1921.)

1. **Parent and child** ⬳2(4)—**In father's action for custody, failure to instruct that defendants must show father incompetent was error.**

In a father's action to recover his child from its maternal grandparents, it was error not to charge the jury that the burden was on defendants to prove that the plaintiff was disqualified or incompetent to have the care, custody, and control of his child.

2. **Parent and child** ⬳2(4)—**Presumption that parent not disqualified is entitled to custody is conclusive.**

If a parent is not in any way disqualified to have the care and custody of his child, the law conclusively presumes that it is for the best interest of the child that he should have such custody.

3. **Parent and child** ⬳2(3)—**If parent lacks natural affection, child's custody may be awarded to another.**

If a father lacks solicitude for his child's welfare so as to indicate absence of usual natural affection, and some one else is ready and willing to give such child a suitable home, the court will, in the child's interest, award its custody to the latter.

4. **Trial** ⬳110—**Improper question to witness not reversible error in absence of bad faith.**

A case will not be reversed because an attorney asks an improper question to which an objection is sustained, unless it be made to appear that he did not ask it in good faith, but to influence the jury improperly, and that it was calculated to have that effect.

On Motion for Rehearing.

5. **Parent and child** ⬳2(3, 4) — **Paramount custody issue is child's welfare, presumed to be with parent until contrary shown.**

In an action for child's custody, its welfare is the paramount issue, and that it will be best served by committing it to the parent must appear from the evidence, and it does prima facie so appear when parentage is proven, and the law so presumes until the contrary is shown.

6. **Parent and child** ⬳2(4)—**Attempt to overthrow presumption that child's welfare requires parents' custody raises a jury question.**

The legal presumption that a child's welfare is best served by its custody being given its parent is not conclusive, although presumed prima facie from parentage, and an attempt to overcome the presumption raises a fact issue for the jury, and the presumption may be overcome by a determination that the parent is disqualified.

7. **Parent and child** ⬳2(2)—**Father's right to custody arises from law's regard for child's welfare.**

A father is not the owner of his child in the sense of its being his personal property; his legal right to its custody arising from the law's regard for the child's welfare.

8. **Parent and child** ⬳2(4)—**Comparative affection of parties seeking custody is for jury's consideration.**

Comparative affection for the child and willingness and ability to administer to its present and future material and moral welfare are for the jury's consideration for what, under the evidence, they may deem them to be worth.

9. **Parent and child** ⬳2(4) — **In action for child's custody, evidence of father's lack of love for child's mother inadmissible.**

In a father's action for custody of his child, testimony of his attending a dance while the child's mother was sick, at a time when they were living apart, would only show lack of affection for his wife, now deceased, which was not an issue, and would not prove his lack of love for the child, and was inadmissible.

10. **Parent and child** ⬳2(4)—**In a father's action for custody, evidence of general reputation of unkindness to child is inadmissible.**

In a father's action for custody of a child, evidence of his general reputation as to being unkind to the child was inadmissible, since such fact is susceptible of better proof.

11. **Parent and child** ⬳2(4) — **Evidence of mother's statement held admissible at father's instance to show why he did not visit child.**

In a father's action for the custody of his child, brought against its maternal grandfather and grandmother, the grandmother's testimony as to what plaintiff's deceased wife said about his not coming to see her would not be admissible at defendant's instance, but would be at plaintiff's to explain why he did not visit the child after such conversation, and it is immaterial whether the wife made the statements, if plaintiff believed she did.

12. **Parent and child** ⬳2(4)—**In a father's action against grandparents for custody, evidence explaining the grandfather's having gun at interview held admissible.**

In a father's action for the custody of his child, brought against its maternal grandparents after its mother's death, the grandfather's evidence that there were indications that some one had tried to burn his barn was admissible to show why he had a shotgun during an interview with plaintiff near the barn, where plaintiff testified he did not thereafter visit his child because he believed the grandfather might shoot him; the reasonableness of such explanation being for the jury.

Appeal from District Court, Runnels County; J. O. Woodward, Judge.

Action by C. W. Clayton against A. L. Kerbey and wife. Judgment for the defendants, and plaintiff appeals. Reversed and remanded.

J. K. Baker, of Coleman, for appellant.
Critz & Woodward, of Coleman, for appellees.

Opinion.

JENKINS, J. The appellant is the father of Commell Clayton, a girl about six years

of age. Appellees are the maternal grandparents of said child. The mother of the child died in February, 1918, since which time she has been in the custody of appellees. Both appellant and appellees bear the reputation of being honorable citizens. Each party is financially able to care for and educate the child.

The case was submitted upon the following special issues:

"Question No. 1: Do you find that C. W. Clayton, the father of the minor, Commell Clayton, is in any wise disqualified to have the care, custody, and control of said child?" To which the jury answered: "Yes."

"Question No. 2: Do you find that said defendants, A. L. Kerbey and Mary Kerbey, the grandparents of said Commell Clayton, are in any way disqualified to have the care, custody, and control of said Commell Clayton?" To which the jury answered: "No."

"Question No. 3: From a consideration of the testimony in this case which do you think best calculated, and which would be to the best interest of the child, Commell Clayton, to provide for, care for, educate, and support said minor child, Commell Clayton, the father, C. W. Clayton, or the grandparents, A. L. Kerbey and Mary Kerbey?" To which the jury answered: "A. L. and Mary Kerbey."

[1] The court instructed the jury that "the burden of proof was upon the defendants, A. L. and Mary Kerbey, to prove by a preponderance of the testimony that the best interest of the child would be best served by leaving the child in the care, custody, and control of said defendants," but did not otherwise charge on the burden of proof. The appellant, in due season, objected to the charge, in that it omitted to inform the jury that the burden of proof was on defendants to prove that appellant was disqualified or incompetent to have the care, custody, and control of his child, and also requested, in writing, a special charge to this effect, which special charge was by the court refused. The refusal of the court to give this requested charge constitutes reversible error.

[2] The law presumes that a parent is qualified to have the care and custody of his or her child until the contrary is shown. Had this charge been given, and had the jury, in view of the same, answered the first question in the negative, that would have been decisive of this case. If a parent is not in any way disqualified to have the care and custody of his child, the law conclusively presumes that it is for the best interest of the child that he should have such custody. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901; Smith v. Long, 181 S. W. 478; Carter v. Lambert, 214 S. W. 566.

[3] On the other hand, if there be such a lack of solicitude for the welfare of his child as to indicate the absence of that natural affection which exists in the heart of most parents for their children, and some one else is ready and willing to give such child a suitable home, the court will, in the interest of the child, take it from the parent and award it to such other person. Schneider v. Schwabe, 143 S. W. 265; Legate v. Legate, 87 Tex. 248, 28 S. W. 281. This is true if for any other reason it should plainly appear that the parent is not a proper person to have the custody of his or her child. The burden of proving such fact is upon him who, by reason thereof, seeks to deprive a parent of the custody of his or her child.

Though it is difficult for us to put our finger on any specific reversible error in the explanatory portion of the charge, we are impressed with the idea that the criticism thereof by appellant to the effect that it does not meet the demand of a fair and impartial trial is not without foundation. Too much prominence was given to the welfare of the child, and not enough to the rights of the father.

We are asked to reverse this case upon the ground that there was no legal evidence upon which the answer of the jury to question No. 1 could have been based. We overrule this assignment.

[4] Appellant also assigns as error that counsel for appellees asked a witness which of the parties the people in the neighborhood thought would best care for the child; also what was the general reputation of appellant as to being kind or unkind to his wife and child. The court sustained objections to both questions. A case will not be reversed because an attorney asks an improper question, unless it be made to appear that he did not do so in good faith, but for the purpose of improperly influencing the jury, and that it was calculated to have that effect.

The latter question was a proper one, and the court should not have sustained the objection thereto.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

On Motion for Rehearing.

Appellant's motion for a rehearing indicates that our opinion herein as to rights of a father to the custody of his child, when contested by others, is not perhaps as clear as it should be. What we hold is:

[5] 1. The welfare of the child is the paramount issue.

2. That the welfare of the child would be best subserved by committing it to the custody of its parent must appear from the evidence. Such fact does prima facie appear when parentage is proven; this for the reason that, on account of the affection that

parents usually have for their children, the law presumes, until the contrary is shown, that the best interest of a child will be subserved by committing it to the custody of its father or mother, as the case may be.

[6] 3. This legal presumption is evidence as to the paramount issue, but is not conclusive.

4. If the prima facie case arising from the legal presumption referred to is attempted to be overcome by evidence to the contrary, this raises an issue of fact for the jury.

5. If the jury, looking to all of the evidence in the case, should find that a father was not in any way disqualified to have the care and custody of his child, the prima facie case in his favor arising from the proof of his parentage would not be overthrown, and he should be awarded the custody of his child.

[7] 6. A father is not the owner of his child, in the sense of its being his personal property. His legal right to its custody arises from the law's regard for the child's welfare.

[8] 7. Where two parties are competing for the custody of a child, the comparative affection of such parties for the child, their willingness and ability to administer to its present and future material and moral welfare, are to be considered by the jury for what, under the evidence, they may deem them to be worth, in deciding the issue of the child's welfare.

We think that these views are in harmony with the decisions of the courts in this and other jurisdictions, based, as they are, on the well-established doctrine that the welfare of children is a matter of supreme importance to the state, and that children are the wards of courts having jurisdiction in such matter.

It was error to admit the testimony of the witness Wood as to what appellant's father said, in his absence, as to not sending Mrs. Clayton's trunk to her.

[9] The testimony as to appellant's attending a dance when his wife was sick should not have been admitted. He and his wife were living apart at that time, and, at most, such conduct would only tend to show a lack of affection on his part toward his wife, which is not an issue in this case. That a man has lost his love for his wife is no proof that he does not love his child.

[10] We have concluded that we were in error in saying that it was competent to prove the general reputation of appellant as to being unkind to his child. That he was unkind to his child is material, but, if such is a fact, it is susceptible of better proof than general reputation.

[11] What Mrs. Kerbey told appellant as to what his wife said about his not coming to see her any more would not be admissible, if offered by appellees, but would be admissible on the part of appellant, as tending to explain why he did not visit his child after such conversation. It is immaterial as to whether appellant's wife in fact so instructed her mother. If appellant believed Mrs. Kerbey's statement, it would have had the same effect upon his mind, whether true or untrue.

[12] The testimony of A. L. Kerbey that he had been informed that there were indications that some one had tried to burn his barn will be admissible as his explanation of why he had his shotgun at the time of the interview with appellant near his barn, if appellant testifies to facts tending to show that he was induced thereby to believe that Kerbey might shoot him if he went to his (Kerbey's) house, and that it was for this reason that he did not thereafter visit his child, which was, and has ever since been, living at Kerbey's house. The issue in this regard is not, did some one attempt to burn Kerbey's barn, but did Kerbey, from what he had been told, believe such to be the fact, and was thereby induced to carry his shotgun and that he did carry the same with the view of shooting appellant. The reasonableness of such explanation is for the jury, and affects the weight but not the admissibility of the testimony.

Appellees have also filed a motion for a rehearing, in which they insist that we should affirm the judgment of the trial court. We have carefully considered this motion, and have reached the conclusion that it, as well as appellant's motion for a rehearing, should be overruled.

Motions overruled.