KENDALL et ux. v. WILLIAMS et ux.
(No. 8555.)

(Court of Civil Appeals of Texas. Dallas. June 18, 1921.)

1. Habeas corpus ⬡⇒113(12)—Finding of lower court as to proper custody of child is conclusive, unless against great preponderance of evidence.

The finding of the lower court as to whose custody of a little girl will be most beneficial to her is not reviewable, unless contrary to the great preponderance of the evidence.

2. Habeas corpus ⬡⇒99(4)—Church-going devoutness not determinative as to right to custody of child.

Where all the applicants for the custody of a little girl were of high character and able to give her a good home, that one family of applicants might be more devout, as shown by church going and zeal in church activities, than the family of the respondent where the little girl was living, was not conclusive as to their right to custody of the child; there being no evidence that the girl's character would not properly develop with the family where she was.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Habeas corpus by H. D. Kendall and wife against Wester Williams and wife, and by D. H. Blacketer against the same defendants, which were consolidated. From judgment for defendants, plaintiffs appeal. Affirmed.

H. M. Wade, of Rockwall, for appellants. E. D. Foree, of Rockwall, and Claude M. McCallum, of Dallas, for appellees.

HAMILTON, J. This suit involves three conflicting claims of right to the custody of Marie Wrye, a little orphan girl, in the custody of appellees. Appellants, Kendall and wife, in pursuit of their desire for custody of the child, instituted habeas corpus proceedings in the district court of Panola county against appellees. The venue of this proceeding was transferred to the district court of Rockwall county. Then appellant D. H. Blacketer filed application for a writ of habeas corpus to take the child from appellees. These causes were consolidated at the request of all parties, after appellees had answered, contesting and denying the right of the court to take from them the custody of the child upon either petition. A hearing was had by the court in vacation. Custody of the minor was decreed to appellees, and all the appellants have appealed.

D. H. Blacketer is Marie Wrye's grandfather; Mrs. H. D. Kendall is her distant cousin, and Mrs. Wester Williams is her aunt. She was about eight years old at the time of the trial. Her father died when she was four years old and thereafter her mother married a man named Cain. With her mother and this stepfather she lived until they died in November, 1918, only one day intervening between their deaths. They left four other surviving children. Immediately after the death of Cain and that of his wife, the brothers of Mrs. Cain, who were named Blacketer, without consulting D. H. Blacketer, who was their father, as well as the grandfather of Marie Wrye and her brothers and sisters, unceremoniously took

charge of the five parentless children, and made distribution of them among their relatives.

Marie was thus given into the custody of her uncle, John Blacketer. Within a few days subsequent to this disposition of Marie to John Blacketer, his wife received a letter from appellee Mrs. Wester Williams, stating that she would like to have one of the orphan boys. Mrs. Blacketer replied, advising Mrs. Williams that she had Marie, and that since she and her husband had a large family Mrs. Williams could come and take Marie. The child soon thereafter was delivered into the care and custody of Mr. and Mrs. Wester Williams, and had been in their home continuously for about 19 months when these proceedings were instituted.

During all this time she had been treated as parents in similar circumstances should treat their own child. Her reasonable wants had been supplied. Her surroundings were wholesome. She regularly attended school, and every advantage conferred upon Lavina Williams, appellees' natural daughter, was also given Marie. No distinction was made between them. Appellees had formed a deep-seated devotion to Marie. Mr. Williams seems to have bestowed upon her the affection which a true father cherishes for his own daughter, and Mrs. Williams gave her the gentle love of a good mother. Their affection she reciprocated, giving them her love in return for theirs. Although by no means wealthy, or as well to do as appellants, they are removed from the miseries and dangers of poverty, and are able to supply the necessities of this ward and bestow upon her the comforts and attainments available to the daughters of the average farmer.

Happily the proof in the case establishes beyond question, and it is mutually conceded by the parties, that all the appellants and appellees are people of good character, and that the surroundings and influences of all their homes are wholesome, so that the situation for the little girl was never perilous, no matter into the hands of which of the contenders the decree might have cast her.

[1] The controlling question is, In whose of the contending parties' custody will the interests of the child probably be best secured and promoted? As a matter of law, her custody must be reposed where her comfort, her happiness, and her highest interests most surely will be conserved. But the question as to whose custody of her will effectuate these requirements of law, and thus be most beneficial to her, is one of fact, which we are without jurisdiction to determine. Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Kirby v. Morris, 198 S. W. 995; Radicke v. Radicke, 206 S. W. 964; Dugan v. Smith, 199 S. W. 655; Clayton v. Kerbey, 226 S. W. 1117. That function, under the circumstances,

belongs to the trial court. We cannot disturb the findings of fact made by the trial court unless they should be so far contrary to the great preponderance of the evidence as to reveal that truth and justice had not been attained in the judgment rendered.

The trial court has found that the best interests of the child will be served by leaving her in the care and custody of appellees. This finding is supported by substantial evidence in the record. It is unnecessary to set it out. Sufficient it is to say that such evidence forecloses the right of appellants to invoke the judgment of this court upon the facts. A finding that her best interests would be served in the custody of any of appellants would have been a finality also, because there was abundant evidence from which such finding could have been deduced. In such circumstances, it is so well settled that the findings of the lower court will not be disturbed on appeal that the citation of precedent authority is not required.

[2] The proof discloses that each and all of the appellants are devout Christians, while Wester Williams is not a member of the church, although his wife belongs to a church. It also appears that appellees attend religious services only at infrequent times, but that they send Marie to Sunday school for religious instruction. On the other hand, the proof, particularly as to Kendall and Mrs. Kendall, is that they give zealous adherence to all the church activities which distinguish a devoutly religious life. From these circumstances appellants argue that the findings of the trial court are contrary to the proof, and that uncontradicted proof of the extremely religious atmosphere of appellant Kendall's home establishes, conceding other things to be equal, that the decree ought to have awarded the little child to his custody in order that there might be instilled into her, day by day, during her childhood, the teachings of that religious faith by which appellants' way through life is lighted and guided, to the end that her development into Christian womanhood may be assured. The sentiments embodied in appellants' argument in support of this view are well calculated to weigh heavily, as mere religious sentiments, with a tribunal all of whose members, under some form or other, embrace and give allegiance to the faith comprehending the various creeds denominated as Christian. But whatever religious allegiance or belief dominates the individual hearts of those who for a time are called to administer the judiciary, their allegiance to judicial functions requires that their judgments conform alone to the rules of law and fundamental justice. The spirit of our government, which itself is the handiwork of Christians, demands as much. The basic principles of upright, honorable, and wholesome living govern the home of those into whose keeping this father-

less and motherless child has been committed. Those who embrace the Christian faith as well, it seems, as those who do not, have come into court, and under the solemnity of oath have declared that appellees are good people, and that their lives always have been so ordered as to command universal respect and confidence. These facts are unchallenged. The highest standards required by law have been applied and complied with. The test of comparative extent of devoutness cannot be substituted for those standards. A court of law is not a place in which to ascertain and declare religious orthodoxy, and derive from it the rights and welfare of people in the ordinary relations of life. Here a test of an exclusively religious nature cannot be entertained.

There is no proof in the record to support the apprehension that Marie Wrye's character will not be molded along proper lines by appellees, that she may not be happy in her situation, or that there she may not body forth into the noblest type of womanhood—such as her foster mother is—thereby attaining her own highest interests as well as those of society and the state.

The judgment is affirmed.