**MEEK v. TAYLOR et al.**

No. 15523.

Court of Civil Appeals of Texas.

Fort Worth.

June 4, 1954.

Rehearing Denied July 2, 1954.

Martin & Bailey, Dallas, for appellant.

G. C. Harris, Greenville, for appellees.

MASSEY, Chief Justice.

Lenton Meek, father of a four year old girl, brought suit against Mrs. Edith Atha Taylor and her husband, Oscar Taylor, to recover custody of said minor. The mother of said child was made a party to the suit but no appeal having been taken by her and she not being a party upon the appeal, any occasion to consider the fact of her existence is removed.

The parents of the minor child were divorced in January, 1951, and in that proceeding the maternal grandparents, the Taylors, intervened, and as part and parcel of the decree of divorce temporary custody of the child was then awarded to them. There was no appeal taken from such judgment and it became final. The instant suit was a new one at a later time by which Lenton Meek sought to regain the custody of his daughter. The trial court held that there had not been a material change in the condition, circumstances, and surroundings of the parties to the suit and the child such as to warrant a change in custody, and that the best interest and welfare of the child would be served by awarding her custody to the Taylors. Judgment was entered accordingly. Lenton Meek brings this appeal.

Judgment reversed and rendered.

In such a case as was instituted by the appellant, it is the burden of a parent seeking custody of his minor child to show a change of conditions such as would require modification of the prior decree if the best interests of the child are not to be injuriously affected. Neal v. Medcalf, Tex. Civ.App., El Paso, 1951, 244 S.W.2d 666; Lynch v. Wyatt, Tex.Civ.App., Texarkana, 1945, 191 S.W.2d 499; Lovelace v. White, Tex.Civ.App., Texarkana, 1948, 209 S.W.2d 422. The child's best interests are injuriously affected whenever they are not best served. It is to be presumed that it is to the best interest of the child that its parent have its custody unless it is affirmatively demonstrated that the best interests of the child require that the parent be deprived of its custody. 23 Tex.Jur., p. 710, sec. 16; Greenlaw v. Dilworth, Tex.Com. App., 1927, 299 S.W. 875, reversing, Tex. Civ.App., 291 S.W. 331; Luman v. Luman, Tex.Civ.App., Texarkana, 1950, 231 S.W.2d 555; Binion v. Mathis, Tex.Civ. App., Amarillo, 1943, 171 S.W.2d 512; Sawyer v. Bezner, Tex.Civ.App., Amarillo, 1947, 204 S.W.2d 19, error ref., n.r.e.

It is not every change in condition which takes place which justifies modification of a prior decree. What must the parent prove to discharge the burden incumbent upon him besides the fact of parentage? We believe that it is sufficient to show any change of circumstances demonstrative of the parent's improved condition or fitness as a custodian, any change of circumstances demonstrative of the fact that the other person is less well fitted or situated as custodian, or any change of circumstances relating to the existing custody which is injurious to the best interest of the child. Proof of any one of these three elements establishes prima facie the parent's right of custody. French v. Hux, Tex.Civ. App., Waco, 1932, 54 S.W.2d 539, error refused; see cases cited under 15 Tex. Jur., p. 675, sec. 170, and p. 679, sec. 172, and under 31 Tex.Jur., p. 1296 et seq., sec. 19 et seq., and in Vol. 29–A, Tex.Digest, p. 124 et seq.

When a parent in a suit of this character has established any one of such elements by competent proof, he has reopened the case and the presumptions of law then exist as they would have existed had there been no former decree placing custody of the child in any other person.

The fact that a former decree placed custody of a minor child in a person other than the parent is res adjudicata only of the fact that the best interests of the child at the time of the former decree were served by its entry. It is not res adjudicata of such fact at any subsequent time. Wilson v. Elliott, 1903 (Sup.Ct.), 96 Tex. 472, 73 S.W. 946, 75 S.W. 368, 97 Am.St.Rep. 928.

The presumptions of law existent once the parent seeking custody has discharged his burden of proof are the same presumptions which would obtain had there never been such a prior decree, or had the custody of the minor child never been in any other person. The presumption is that the best interests of the minor child are best served through its custody in its parent. That presumption shall persist unless and until the contrary is shown. 23 Tex.Jur., p. 710, sec. 16; State ex rel. Wood v. Deaton, 1900, 93 Tex. 243, 54 S. W. 901; Clayton v. Kerbey, Tex.Civ.App., Austin, 1920, 226 S.W. 1117, error refused; Brooks v. De Witt, Tex.Civ.App., San Antonio, 1944, 178 S.W.2d 718, reversed in 143 Tex. 122, 182 S.W.2d 687, certiorari denied 325 U.S. 862, 65 S.Ct. 1196, 89 L. Ed. 1983; Sawyer v. Bezner, supra. The burden of showing the contrary is upon the party who seeks to deprive the parent of custody. He must affirmatively demonstrate that the best interests of the child require that the parent be deprived of the custody, Clayton v. Kerbey, supra; State ex rel. Wood v. Deaton, supra; or he must prove that his continued custody best subserves the welfare of the child. Hustace v. Black, Tex.Civ.App., El Paso, 1945, 191 S.W.2d 82. He must affirmatively prove that the parent is unfit to have custody or is disqualified to have custody or that the best interests of the child demand that the parent be deprived of the custody. 31 Tex. Jur., p. 1297, sec. 21, and p. 1298, sec. 23;

Fox v. Fox, Tex.Civ.App., Fort Worth, 1948, 210 S.W.2d 622; Supreme Court's decision in De Witt v. Brooks, supra; Davis v. Sears, Tex.Com.App., 1931, 35 S.W.2d 99. In proving the last element, it is not sufficient for such a party to prove that he is best fitted to have custody by virtue of his station in life or greater financial resources, that the child has more convenient or luxurious quarters or care and attention, etc., but he must prove some circumstance affirmatively requiring the deprivation of the parent's custody, such as the fact that the child would be harmed, physically, mentally or morally, were its custody given to the parent, or some circumstance which would affirmatively demonstrate that there would be a lack of solicitude for the welfare of the child were it given to the parent rather than the party seeking custody, such as to indicate absence of natural affection for the child from the parent,.which the child would receive were its custody not disturbed. Clayton v. Kerbey, supra.

 The trial judge in such a case may become vested with broad discretionary powers but by the requisites of the rules of law in such cases the trial court does not become vested with discretion unless the prima facie case made out by the parent in proving one or more of the three elements whereby his right to custody is prima facie established is rebutted in relation to whatever element or elements the parent proved in establishing the change of condition,— or unless such person discharged his burden to prove the unfitness or disqualification of the parent, or that the best interests of the child require that the parent be deprived of custody. State ex rel. Wood v. Deaton, supra.

 Each individual case must be tested in the light of these requisites, and in any case where the person other than the parent has not rebutted every premise demonstrating change of condition, which was established by the parent as part of his case, or has not discharged the burden of proof upon his affirmative case, the trial judge has no discretion and because of the presumptions of law and rules of law the cus-

tody of the child must be granted to the parent. It has been said in such instances that if he decrees custody in a person other than the parent he abuses his discretion. We prefer to view such a situation as one in which a trial judge is not empowered to exercise discretion. State ex rel. Wood v. Deaton, supra; Smith v. Long, Tex.Civ. App., Amarillo, 1915, 181 S.W. 478, error dism.; Carter v. Lambert, Tex.Civ.App., Fort Worth, 1919, 214 S.W. 566. In any event, the discretion with which the trial court is vested must be exercised in accordance with the rules of law, and with due obeisance to the compelling conclusive legal presumptions. Edwards v. Edwards, Tex. Civ.App., El Paso, 1926, 288 S.W. 634, reversed in part on other grounds in Tex. Com.App., 295 S.W. 581.

 Bearing in mind what we have said relating to presumption and burden of proof and discretion of the court, we examine the evidence with a view to determination of whether the trial court had the discretion to enter the judgment which was entered decreeing the custody of the child in the appellees.

At the time of the trial the child had resided with appellees approximatey two years. They lived in Quinlan, Texas. Quinlan is approximately forty-five miles from Dallas. The appellant lived in Dallas. Until the hereinafter mentioned occurrences took place, the appellant was wont to make a weekly trip from his home to appellees' home to see his child. Often he would take the child to Dallas for weekends and holidays. In general, it appears that appellant did all that he could reasonably be expected to do in order to effect and maintain a father's relationship to his minor child under the handicap of the situation which existed. He had kept up the child support payments satisfactorily and no complaint was advanced in the course of this suit of his failure to abide by the judgment of the Dallas court in so far as his support and maintenance of the child were concerned. During the entire period of their custody, the appellees undoubtedly had done their part in rearing the child.

They had properly fed, clothed and cared for her as well as any parent could have been expected to to; they had supplied her with a pleasant home and environment and had given the child their love, not only as grandparents but as parents as well. Obviously until the occasion hereinafter described the best interests of the child were served as well by the custody which had been decreed in the appellees as would have been the case had the custody been decreed in any other person. The evidence demonstrated that the appellees had loved the child and were devoted to her and she in turn loved them and was devoted to them. The evidence also indicated that the appellees were better situated physically and financially than was the appellant.

Over the Christmas holidays in 1952 the child had stayed with appellant in Dallas. On December 28, 1952, he drove from Dallas back to Quinlan to return the child to the home of appellees. The exact time the child was taken to the house was in some dispute but unquestionably it was between the hours of 7:30 and 9:00 P.M., which was past the child's normal bedtime, and she was further undoubtedly tired and restless and in a condition where she would have been best tucked in bed and fast asleep. However, she was not, and she was unwilling to go to bed peaceably. The father was attempting to leave her at appellees' home but the child was objecting and by the form of objection was demanding that she be taken to the picture show instead of going to bed. Instead of walking away and leaving the child in this state for the grandparents to control, the father, perhaps in the exercise of bad judgment, chose to stay and offer suggestions. The child was crying and insisting that she be taken to the picture show. It was appellant's suggestion that he put the child back in the car and either get her to sleep by a ride or take her down town to the picture show where she would soon fall asleep, after which he would bring her back to the house to be put to bed. Appellees were upset because the child was upset, and of course they were hampered in the exercise of the authority they normally had over the child by the presence of her father. The situation culminated in considerable anger on the part of Mr. Taylor, the grandfather, and he ordered the father away with instructions not to return until sent for. The father left and did not return. The grandparents never sent word to the father that he would be welcome to return, nor did they make any attempt otherwise to restore the father and daughter relationship which had existed prior to that occasion. From the testimony of the grandfather upon the occasion of the trial, it was obvious that his attitude toward the father was not conducive to any harmonious relationship between them. He testified that since he had ordered the father to "Get the hell out * * *" and had told him "* * * when I need you I will call you", he had not called him because he had not needed him, and he further testified he did not need him (the father) to the date of trial. The date of the trial was July 6, 1953, over six months subsequent to December 28, 1952.

The evidence of these events and the fact that appellant has not returned to the home of appellees is not rebutted. The material facts are undisputed.

Prior to the events of December 28, 1952, appellant, through diligent effort and conscientious devotion to the duties of a parent and the needs of a child, had established to a near maximum under the difficulties presented the relationship of father and daughter with his child. Following the events of that night, through the action of and instruction from appellee Oscar Taylor, that relationship was interrupted. No longer was the appellant free as he had been theretofore to visit with his child and preserve as best he might the love and affection then existent, and to nourish the feeling of security in the child borne from the knowledge on her part that she had a father upon whom she could depend in time of need. Normal growth of such affection and sense of security culminates, in the case of a daughter, in her knowledge upon attainment of maturity her own children will in turn have the love and affection

of a grandfather just as she had from her own grandfather. But for her good fortune to have had grandparents who were ready and willing to take her into their home as a small child when her natural home was broken and when neither her father nor her mother was physically or emotionally situated or suited to care for her, she would have been subjected to a deprivation much greater than that she did suffer. Her own children must have preserved, in so far as society may preserve it, a similar advantage. This is to her best interest though she is still a child. Such an advantage may begin to be lost upon the occurrence of just such an event as occurred on December 28, 1952. Had the appellees attempted to make amends and restore the relationship pre-existent to that time, it might have been possible to have eliminated the occurrence as a cause compelling our holding that a change of condition has occurred whereby the welfare of the child requires a change in her custody. The question then might be dependent upon the facts as demonstrable from the manner in which appellant's relationship with his daughter was re-established, but appellees did not do this. The father and daughter relationship between appellant and his child was shown to have been rent asunder and in no degree restored. Appellant dared not enter the home in which his daughter resided.

Such proof has established as a matter of law a change of conditions and circumstances involving appellant's child which require a change in her custody. A condition injurious to the best interest of the child is established relative to the existing custody. The proof is not disputed. Therefore, appellant has met the burden of proof in respect to change of condition and such proof not having been rebutted the trial court would not have any discretion empowering him to leave the custody of the child with the appellees unless they met their burden of proof on an affirmative case in establishing that appellant was unfit or otherwise disqualified to have the custody of his child, or that the best interests of the child required that he be deprived of such custody.

Appellees did not introduce any proof demonstrating that appellant was not a fit person to have custody of his child. Neither did they introduce any evidence demonstrating that he was otherwise disqualified as a custodian of his child. They did show, as we have mentioned, circumstances indicating that they were better situated financially and physically than was the appellant. They showed that the quarters in which appellant would lodge the child, were he given custody, were not as convenient or luxurious as those which would be afforded by appellees were they given custody. It was also shown that were appellant given custody the child would be cared for during the day time by appellant's mother, who was sixty-five years of age. This person was shown to have been physically active, in good health, mentally alert and experienced in rearing children. It was shown that the child was in good health and there was not even an inference that she would be harmed physically, mentally and morally were her custody given to appellant. Such evidence as was received could not be held to amount to proof of any probative force and value establishing that the best interests of the minor child required that appellant be deprived of her custody.

■ Appellees' evidence was insufficient to discharge the burden of proof upon them through an affirmative defense to appellant's action and they did not rebut appellant's proof on change of condition.

■ In view thereof, it is our opinion that the trial court never had any discretion and that a judgment decreeing custody in the child's parent, the appellant, is compelled.

Judgment of the trial court is reversed and judgment is here rendered decreeing that the care, custody and control of the minor child, Linda Marie Meek, be given to her father, Lenton Meek, appellant herein.