## DUCKWORTH v. THOMPSON et ux.
### (No. 840.)

Court of Civil Appeals of Texas. Waco.
Oct. 31, 1929.

Rehearing Denied Dec. 12, 1929.

T. R. Mears, of Gatesville, for appellant.

J. P. Word and H. J. Cureton, both of Meridian, for appellees.

GALLAGHER, C. J. This is an appeal from the judgment of the district court in a habeas corpus proceeding, instituted by appellant, O. D. Duckworth, against appellees, J. O. Thompson and wife, Bertie Thompson, to recover control and custody of L. D. Duckworth, a minor son of appellant.

L. D. Duckworth was eight years old at the time of trial. He was delivered prematurely by an operation in a futile attempt to save his mother's life. She died within an hour after his birth. Mrs. Thompson, one of the appellees herein, at the request of his father, and with the approval of his relatives, took charge of him about an hour after his birth, and has had charge of him, and has tenderly cared for him ever since. She and the child's mother were sisters. He was a delicate child from the beginning, and was carried on a pillow for five months. For about three months his condition required constant attention all through the night. Mrs. Thompson had the sole care of him during such time. Her husband and son frequently did the housework so that her entire time and energy could be devoted to his care. He is still delicate in health and of a timid disposition. He is devotedly attached to his foster parents, especially his foster mother. A physician testified that the sundering of such associations and the tender ties of affection existing between said child and Mrs. Thompson would be very detrimental to him in his then state of health.

Appellant married a second wife about four years before the trial. She was a sister of appellee Thompson, and had made her home with him. Cordial relations existed between appellant and his wife and appellees until a misunderstanding arose over the fact that appellee Thompson enrolled said child on the scholastic census under the surname of Thompson instead of Duckworth. Some hasty words were exchanged between appellant and Thompson about the matter, and shortly thereafter this suit was instituted. Prior to that time appellant occasionally visited the home of appellees, and incidentally enjoyed association with his child. There is no testimony that appellant exhibited any special affection for him during said time. Except for a small doctor's bill and one or two other small sums aggregating approximately $100, appellees have maintained said child the entire time at their own expense.

Mrs. Thompson lavishes maternal affection upon said child. The year preceding the trial was his first within scholastic age. He was too delicate to attend school with anything like regularity, but she procured books and taught him at home so that his teacher testified he was up with his class. Mr. Henshaw, the child's maternal grandfather, testified that he advised appellant at the time of the child's birth to give it to Mrs. Thompson to rear, and told him, that if he did that, he

must never take it away from her, because it would be like her own, and that appellant said, "Henshaw, upon my honor I will never take it from her." Mrs. Thompson testified that she accepted the care of said child an hour or two after his birth; that about two days later she and appellant named him together for his mother and father, and that appellant told her at that time to take the baby, and raise him up, and that he gave him to her "for always." Another witness testified that appellant so stated while on the way to the burial of the child's mother. Appellant denied said statements in toto. There are some other conflicts in the testimony, but they must all be considered as resolved against appellant by the verdict of the jury and the judgment of the court. Appellees reside near Kopperl, about 40 miles from Valley Mills, where appellant resides. It would be more convenient for the child to attend school from his father's home than from the home of appellees, but appellees provided a way for him to ride to and fro when he was able to attend school during the preceding year, and expressed their willingness to continue to do so. Appellees admitted in open court that the general reputation of appellant and his wife in the community in which they lived for being nice, honorable, upright, respectable, and law-abiding citizens was good. The testimony showed without contradiction that appellees also possessed such high reputation, and, in effect, that either family would afford a suitable home for the child. Other matters of relative advantage or disadvantage in reference to the respective homes must also be considered solved in favor of appellees by the verdict and judgment.

The testimony disclosed that the child had learned that appellant was seeking to remove him from the only home he had ever known and from those who had loved and cared for him all his life, and whom he had learned to love in return, and to take him to appellant's own home, and that he became greatly alarmed at the prospect. He qualified as a witness to the satisfaction of the court, and testified in the case without challenge of his competency as a witness by appellant. He testified that appellees had always been good to him; that he loved them "a whole lot"; and that he wanted to continue to stay with them. He further testified that he had been told by appellees to love his father and be nice to him when he came to see him, but that he did not want to go and live with him, but desired to remain with appellees. He further testified that at that time in the courtroom he did not want to go and sit in his father's lap nor hug him. Appellees testified that appellant and his wife were welcome at their home, and that they could come and visit the child there whenever they chose, and that they bore no ill will on account of this suit.

The court, at the request of appellees, and over the protest of appellant, impaneled a jury for the trial of the cause. The cause was submitted to the jury upon a single issue, as follows:

"Taking into consideration only the best interests of the minor child, L. D. Duckworth answer whether said minor child should be left in the care and custody of the defendants, J. O. Thompson and wife, Bertie Thompson, or should be given into the custody and care of the plaintiff, O. D. Duckworth."

The jury answered that he should be left in the care and custody of the appellees. The court adopted the finding of the jury as his finding in the case, and further found that the best interests of said minor child would be served by leaving him in the care and custody of appellees; that they had cared for and reared him from his birth for a period of eight years; that they were suitable persons morally, financially, and physically to have the custody and care of said child, and that their home was a suitable place morally and from the standpoint of health and education for the rearing of said child; that it would be detrimental to his best interests to break the tender ties existing between him and appellees and place him elsewhere, notwithstanding other surroundings would be equally suitable morally, financially, and physically for his rearing. The court rendered judgment in accordance with said findings, and incorporated therein provisions for the visiting of said child by appellant at the home of appellees, and for visiting by said child in the home of appellant. The reasonableness and sufficiency of such provisions are not assailed.

### Opinion.

■■ Appellant presents as ground for reversal the following proposition:

"Where the court finds that the two homes are equally suitable morally, financially and physically, for the rearing and education of a child, it is without authority of law to deprive the father of the custody of his child."

Our Supreme Court and many of our Courts of Civil Appeals have frequently declared that the father is the natural guardian of his child, and that it will be presumed that its interests and welfare will be best promoted by continuing such guardianship, until it is made to plainly appear that the father is no longer worthy of the trust. Such is the substance of a quotation incorporated by our Supreme Court in its opinion in State v. Deaton, 93 Tex. 243, 54 S. W. 901, 903, and there declared to be sustained by the authorities. See, also, Edwards v. Edwards (Tex. Com. App.) 295 S. W. 581, 582, 583; Smith v. Long (Tex. Civ. App.) 181 S. W. 478, 479; Carter v. Lambert (Tex. Civ. App.) 214 S. W. 566, 567, 568; and Sears v. Davis (Tex. Civ. App.) 19 S.W.(2d) 159, 162, et seq., all cited by appellant in support of the proposition under consideration. That such is the general rule is apparently conceded by appellee. Appellee

contends, however, that the facts of this case constitute it an exception to such general rule, and bring it within the rule announced by the court in Dunn v. Jackson (Tex. Com. App.) 231 S. W. 351, 353, et seq. The exact contention made by appellant in this case was urged by the father in that case and adopted and applied by the trial court in determining the judgment entered therein. The Commission of Appeals held that the trial court erred in doing so, and in that connection said:

"The parent is the guardian by nature of his children and his right to their custody is paramount, but this right may be forfeited by misconduct or lost through misfortune; but where he has surrendered this custody to a third person, who performs the duties incumbent upon him as the natural guardian, a new condition is created which inures to the benefit of the child. The law does not prohibit such a transfer by the parent, but, on the contrary, allows the child to reap the benefit therefrom, and upon a habeas corpus proceeding by the parent to regain custody of the child the paramount interest of the child becomes the dominant issue. Legate v. Legate, 87 Tex. 248, 28 S. W. 281. * * *

"The trial court, as shown by its conclusion of law, proceeded upon the theory that the parent is entitled to the custody of the child unless respondent establish by clear and satisfactory evidence that the parent is an improper person to educate and rear her. This places a greater burden upon respondent than the law demanded. No such burden rested primarily with respondent. Of course, if respondent had established that the parent was an improper person and respondent a proper person, able and willing to care for the child, she would have been entitled to retain custody of her. The parent's fitness, however, was not an insurmountable obstacle to the retention of the custody by respondent, because the parent's right must yield when the best interests of the minor demand it.

"The error of the court is made manifest in the third conclusion of law. The court recognizes that the welfare of the child is the sole criterion in determining her custody, but because it was not shown that the parent was an improper person, indulged the presumption, in disregard of the evidence as to the best interests of the child, that her best interest would be best served by being in the custody of the parent. The effect of this holding was to utterly ignore, as immaterial to a decision of the cause the expressed wishes of the child, who was nearly 14 years of age at the time she testified, to remain with her grandmother, the strong attachment she had formed for her grandmother in response to the affection bestowed upon and care taken of her by the grandmother and the severing of ties formed during the most impressionable period of her life, by taking her from the only home she had ever known and placing her in a home whose inmates she had no more affection for than if they were rank strangers.

"These things were matters of vital importance in determining the important question of fact as to whose custody would be most beneficial to the child's interest; and the evident failure to consider them, coupled with the court's requirement that respondent prove the relator an improper person to educate and rear the child, necessitate, we think, a reversal of the cause."

The facts in this case are very similar to the facts in said case. It is true there is a conflict with reference to whether appellant agreed not to attempt to retake the child from the care and custody of Mrs. Thompson, but such conflict must be so solved as to support the judgment rendered by the trial court rather than to overturn it. It is also true that the child in this case is younger than the one involved in that case. The testimony of Mrs. Thompson and the physician as to the physical condition of the child and the probable injurious effect upon his mental emotions and physical health of his removal to the home of appellant at this time, in our opinion, more than offsets such difference in the ages of the respective children. The rule announced in Dunn v. Jackson was expressly approved by the Supreme Court in adopting the judgment recommended by the Commission of Appeals and entered by it in that case. Such rule was recognized and followed in Miller v. Banks (Tex. Civ. App.) 280 S. W. 301, 302 (writ dismissed), and Zephyr v. Miller (Tex. Civ. App.) 14 S.W.(2d) 915. See, also, in this connection, Donnell v. Baker (Tex. Civ. App.) 15 S.W.(2d) 120 et seq. Mrs. Donnell, mother in that case, applied to the Supreme Court for a writ of error on the ground that the court erred in refusing to render judgment awarding to her the custody of her minor child, and the Supreme Court dismissed her application. The same rule in effect was stated by the Commission of Appeals in Castro v. Castellanos, 294 S. W. 525, 526, from which we quote as follows:

"Under this provision of the law and the facts of this case, the mother being dead, the plaintiff in error, being the surviving parent, has the prima facie right to the custody of the minor. Having this prima facie right under the law, the burden of establishing by a preponderance of the evidence rested upon the defendants in error to show that this prima facie right has been overturned by the testimony in the case. This, of course, they could do by showing the unfitness of the plaintiff in error, or his incapacity, *or any other conditions, the legal effect of which would be to demonstrate that the best interests of the child would be served by giving them its custody.*" (Italics ours.)

None of the cases cited and relied on by appellant involved a combination of facts similar to that shown in Dunn v. Jackson or in the case here under consideration, nor any

sufficient combination of facts to take them, or any of them, out of the general rule. Appellant lays great stress upon certain language used by the Commission of Appeals in its opinion in the case of Edwards v. Edwards, supra. The only issue involved in that case was the right of an appellate court, where the evidence is conflicting, to reverse the finding of the trial court and render a judgment contrary thereto instead of remanding the case. The question of the moral unfitness of the mother was raised in that case, and the evidence was conflicting. No other ground for depriving her of the custody of her child seems to have been urged. Edwards v. Edwards (Tex. Civ. App.) 288 S. W. 634, 635, et seq. No issue of whether she could be deprived of such custody except on account of personal unfitness or inability was involved. We are therefore of the opinion that the rather strong expressions of the learned judge who wrote that opinion, on the subject of whether the sole ground upon which a parent can be deprived of the custody of his child is unfitness or inability to care for it, embody merely his personal views on a proposition of law not involved in the case. We do not think that, under such circumstances, the adoption of the judgment recommended by the Commission of Appeals in Edwards v. Edwards should be construed as a tacit disapproval of the holding in Dunn v. Jackson, supra, since the issue there discussed was the only one involved, and necessarily the basis of the judgment entered by the Supreme Court in that case. Our Supreme Court has repeatedly stated that its action in adopting and entering the judgment recommended by the Commission of Appeals does no more "than to simply adopt the view of the Commission as to the determination to be made of the cause." Hager v. Stakes, 116 Tex. 453, 294 S. W. 835, 838, par. 1; McKenzie v. Withers, 109 Tex. 255, 206 S. W. 503; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 291, 29 A. L. R. 566. Our comments on the case of Edwards v. Edwards apply in the main to the case of Greenlaw v. Dilworth, 299 S. W. 875 et seq., also by the Commission of Appeals.

Appellant complains of the action of the court in permitting L. D. Duckworth, the child whose custody is in controversy herein, while on the stand as a witness for appellees, to testify that he wanted to remain with them. The objection urged to said testimony was that he was of such tender age that he did not possess sufficient discretion to give such testimony, and that the same was inflammatory. The court in that connection instructed the jury, in substance, to limit their consideration of such testimony to the issue of the character of treatment given said child by appellees and the relations existing between them. That the wishes of a child whose custody is in controversy may, if it be of a sufficiently mature age to judge for itself, be consulted and weighed with other testimony in determining the issue, but that its choice is not necessarily a controlling factor, is well established. Dunn v. Jackson, supra, and authorities there cited. Said L. D. Duckworth was eight years old. He was examined on his voir dire with reference to his competency to testify as a witness in the case, and held competent by the court. Such holding is not challenged.

The Supreme Court of Alabama, in the case of Neville v. Reed, 134 Ala. 317, 32 So. 659, 660, 92 Am. St. Rep. 35, a suit by a father to regain the custody of his child, held that the preference of the child, who was only nine years old, was entitled to consideration. The testimony of both appellees, admitted apparently without objection, disclosed that the child whose custody is in controversy in this case not only did not want to go to reside with appellant, but also that he was alarmed at the prospect of his being required to do so. The fact that he was only eight years old, in our opinion, went merely to the weight to be given to his choice rather than its admissibility. The admission of such testimony from said child, especially as limited by the charge of the court, constitutes no ground for a reversal.

Appellant complains of the action of the court in impaneling a jury in this case and in submitting to them for determination the issue above recited. The court may in his discretion, at the request of either party to a suit involving the custody of a child, impanel a jury and submit issues of fact thereto for determination. While the verdict of such jury is, as to the determination of the ultimate issue of custody, merely advisory, the court may adopt the same and make its finding his own. Lawler v. Lawler (Tex. Civ. App.) 15 S.W.(2d) 684, 685, pars. 5 and 6, and authorities there cited. The court in this case not only adopted the verdict of the jury, but also made independent findings fully covering the same ground, which findings are ample to support the judgment rendered. No reversible error is shown.

The judgment of the trial court is affirmed.