**DUNN v. JACKSON. (No. 228–3404.)**

(Commission of Appeals of Texas, Section A. June 1, 1921.)

**1. Habeas corpus ⬾99(1)—Parent is natural guardian of his children, as respecting right to habeas corpus.**

The parent is the guardian by nature of his children, and his right to their custody is paramount, but this right may be forfeited by misconduct or lost through misfortune.

**2. Habeas corpus ⬾99(3)—Interests of child prevail in proceedings for custody.**

A parent may surrender the custody of his child to a third person, and on habeas corpus proceedings by the parent to regain the custody the paramount interest of the child becomes the dominant issue.

**3. Habeas corpus ⬾85(1)—Third person may defeat habeas corpus by father to regain custody of child by showing it is not to the benefit of the child.**

Where a parent who surrendered custody of his child to a third person brought habeas corpus to regain the custody, the third person has the burden of establishing facts necessary to overcome the legal presumption in favor of the parent's custody, but it is sufficient if the third person show that the best interests of the child demand that it remain in his or her custody, and it is improper to grant the parent the custody of the child, regardless of all else, unless his unfitness be shown.

**4. Habeas corpus ⬾99(6)—Wishes of child of sufficient age to judge for itself should be considered in habeas corpus proceedings.**

In determining the custody of a child, its wishes, where sufficiently mature to judge for itself, should be consulted, and weighed with the other testimony, but the child's choice is not necessarily a controlling factor.

**5. Habeas corpus ⬾99(1)—Father, though suitable, is not entitled to custody of child at all events.**

Where the father of a baby on his wife's death gave her into the custody of her maternal grandmother, who cared for the infant until

she was 14, the mere fact that the father, who had married again and had other children, was a proper person to have the custody of the infant, does not entitle him to its custody, regardless of the wishes of the infant, who had became estranged from her father, stepmother, and half-sisters, and the maternal grandparent should be allowed to retain custody where for the best interests of the child.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Habeas corpus proceedings by J. T. Jackson to recover from Mrs. L. A. Dunn the custody of his minor child. Judgment for plaintiff was affirmed by the Court of Civil Appeals (212 S. W. 959), and defendant brings error. Judgments of Court of Civil Appeals and of district court reversed, and cause remanded for new trial.

R. R. Taylor, of Jefferson, for plaintiff in error.

Schluter & Singleton, of Jefferson, for defendant in error.

SPENCER, J. This habeas corpus proceeding was instituted by J. T. Jackson to regain the custody of his minor child, Annie Jackson, from the custody of the child's maternal grandmother. The father was awarded custody of the child, and from this order respondent appealed to the Court of Civil Appeals, which court affirmed the judgment of the trial court. 212 S. W. 959.

The findings of fact and conclusions of law by the trial court are as follows:

"(1) I find that Annie R. Jackson was born in February, 1905, in Marion county, Tex., and while she was an infant only two weeks old her mother died, and her grandmother, Mrs. L. A. Dunn, was present at the death of Mrs. J. T. Jackson, her daughter, and that the applicant herein, J. T. Jackson, consented for Mrs. L. A. Dunn to take his infant daughter and care for her, and consented at that time not to retake the custody of the child from its grandmother.

"(2) Mrs. Dunn took the care and custody of Annie Jackson, and cared for her tenderly and well from that time to this date.

"(3) J. T. Jackson remarried after his first wife's death, and to this marriage were born two children, both girls. The older is past ten years of age, the younger is eight years of age.

"(4) A great deal of the time since J. T. Jackson's second marriage he has lived in Marion county, but for the last several years he has lived in Louisiana.

"(5) I find that Mrs. L. A. Dunn is of good moral character and an indulgent grandmother, but for the past three years has been practically an invalid, but is now somewhat improved; that she and her husband have separated and are not now living together, but she is living with a single son about 25 years of age, and she and this single son and another son who is working in the oil fields of Louisiana, and a daughter who is married are very fond and almost passionately attached to Annie Jackson, and that she likewise is very fond of them and does not want to leave them. The grandmother does not oppose Annie going with her father if she wishes to go.

"(6) I find that J. T. Jackson is a man of honorable deportment and integrity, is kind and good to his family, but of a temperament that is not enthusiastically demonstrative in his affections; that he loves his daughter and is able and is always a proper person to have the care and custody of his own children; that he is now earning $140 per month and is working in Marion county, but has only recently moved to Marion county from Louisiana, and his second wife and two daughters have not yet returned to Marion county, but will do so at once; that he is diligent, industrious, and able to educate and care for and educate his daughter and desires her care and custody.

"(7) I find that the stepmother of Annie Jackson long desired that she be brought to her father's home and raised with her half-sisters, and the only reason that it has not been heretofore done is that Annie's father regretted very much to deprive the grandparents of the child for whom they had formed such strong attachment.

"(8) I find that in recent years there has become an estrangement from some cause of the child against her father, stepmother, and half-sisters, and that she now bears no more affection for them than if they were rank strangers about whom she knew nothing, and I am unable to determine what the cause is.

"(9) I find that J. T. Jackson has not contributed a great deal to the support and maintenance of his daughter Annie, and that her support and maintenance has been furnished by her grandparents and two uncles and an aunt. I find that several years ago, when Annie was small, her stepmother purchased goods and made up some clothing or wearing apparel for Annie and sent them to her, and that Annie's aunt and grandmother returned the clothing with no explanation whatever, but that they now say they were returned because they were too small and cheap and poorly made; and I am led to believe there is a very decided dislike on the part of the grandmother, uncles, and aunt of Annie towards Annie's stepmother, without any apparent cause that I am able to find.

"Conclusions of Law.

"(1) I conclude that the parents are the natural guardians of their minor children and entitled to their custody as against the world, except in instances where the parents are of such character that the association of the child with the parent would be injurious to either the physical, moral or educational welfare of the child, and the burden is on those seeking to defeat the parental custody to establish such unfitness by clear and satisfactory proof.

"(2) I conclude that the agreement of J. T. Jackson with the grandmother of Annie to never retake the custody of Annie from her grandmother cannot in any way alter, change, or affect the right of J. T. Jackson to the custody of his daughter, nor his parental and legal obligations to care for, educate and maintain her.

"(3) I conclude that the welfare of Annie, according to the law, should be the sole crite-

rion in determining her custody, and unless it is satisfactorily shown to me that the parent is an improper person to have the custody of his child, I conclude that the welfare of the child will be better· served by being in the custody of the parent than in the custody of any one else; therefore, on the foregoing findings of fact, I awarded the custody of Annie Jackson to her father."

The findings of fact reveal that the minor is offered two homes equal in so far as material comforts are concerned; one by the father and the other by the maternal grandmother. This condition, unfortunate in the sense that the designation of one of the two robs the other of the girl's affections and constant association which both cherish, is due to the fact that the father, because of the mother's death, placed her, when but two weeks of age, in the care and custody of the grandmother, consenting not to retake the child from her custody.

[1, 2] The parent is the guardian by nature of his children and his right to their custody is paramount, but this right may be forfeited by misconduct or lost through misfortune; but where he has surrendered this custody to a third person, who performs the duties incumbent upon him as the natural guardian, a new condition is created which inures to the benefit of the child. .The law does not prohibit such a transfer by the parent, but, on the contrary, allows the child to reap the benefit therefrom, and upon a habeas corpus proceeding by the parent to regain custody of the child the paramount interest of the child becomes the dominant issue. Legate v. Legate, 87 Tex. 248, 28 S. W. 281.

In the case of the State v. Deaton, 93 Tex. 243, 54 S. W. 901, Judge Brown, speaking for the Supreme Court upon this question, quotes with approval from Weir v.. Morley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672, as follows:

"What is for the best interest of the infant is the question upon which all cases turn at last, whatever may be said in the opinion about contracts; and the answer· returned is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof; the presumptions are against it."

[3] Under this just rule, the burden of proof rested with the respondent to establish fact necessary to overcome the legal presumption in favor of the parent's custody. It d not require, however, that respondent p the parent disqualified by misconduct o isfortune; but the burden resting upon re ndent is met by establishing that the interests of the child demand that she n in the custody of respondent.

trial court, as shown by its conclusion , proceeded upon the theory that the

parent is entitled to the custody of the child unless, respondent establish by clear and satisfactory evidence that the parent is an improper person to educate and rear her. This places a greater burden upon respondent than the law demanded. No such burden rested primarily with respondent. Of course, if respondent had established that the parent was an improper person and respondent a proper person, able and willing to care for the child, she would have been entitled to retain custody of her. The parent's fitness, however, was not an insurmountable obstacle to the retention of the custody by respondent, because the parent's right must yield when the best interests of the minor demand it.

[4, 5] The error of the court is made manifest in the third conclusion of law. The court recognizes that the welfare of the child is the sole criterion in determining her custody, but because it was not shown that the parent was an improper person, indulged the presumption, in disregard of the evidence as to the best interests of the child, that her best interest would be best served by being in the custody of the parent. The effect of this holding was to utterly ignore, as immaterial to a decision of the cause, the expressed wishes of the child, who was nearly 14 years of age at the time she testified, to remain with her grandmother, the strong attachment she had formed for her grandmother in response ·to the affection bestowed upon and care taken of her by the grandmother and the severing of ties formed during the most impressionable period of her life, by taking her from the only home she had ever known and placing her in a home whose inmates she had no more affection for than if they were rank strangers.

These things were matters of vital importance in determining the· important question of fact as to whose custody would be most beneficial to the child's interest; and the evident failure to consider them, coupled with the court's requirement that respondent prove the relator an improper person to educate and rear the child, necessitate, we think, a reversal of the cause.

The wishes of a child whose custody is in controversy may, if it be of a sufficiently mature age to judge· for. itself, be consulted and weighed with other testimony in determining the issue; but its choice is not necessarily a controlling factor. Ellis v. Jesup et al., 74 Ky. (11 Bush) 403; Neville v. Reed, 134 Ala. 317, 32 South. 659, 92 Am. St. Rep. 35; Workman v. Watts, 74 S. C. 546, 54 S. E. 775; State v. Richardson, 40 N. H. 272; Hurd on Habeas Corpus (2d Ed.) 531.

We recommend therefore that the judgments of the Court of Civil Appeals and of the district court· be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of

Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.