### DAVIS et ux. v. SEARS et ux.
### No. 1200—5551.

Commission of Appeals of Texas, Section B.

Feb. 4, 1931.

Samuels, Foster, Brown & McGee, of Fort Worth, Paul V. Harrell, of Cross Plains, and Phillips & Phillips, of Dallas, for plaintiffs in error.

Mack & Mack, of Fort Worth, and John W. Woods, of Dallas, for defendants in error.

SHORT, P. J.

This is a habeas corpus proceeding instituted by the parents of a male child now 5 years old, against Porter J. and Annie Davis, husband and wife. The application for the writ states that the minor son, Kent Sears, Jr., of the applicants, is in possession of, and is illegally restrained of his liberty by said Davis and wife. There was no other pleading on the part of the parents of the minor. Davis and his wife answered at some length, and, after a general demurrer and a general denial, alleged that Mrs. Alma McBroom Sears, under the name of Alma McBroom, had, by written instrument duly executed, empowered the Hope Cottage Association of Dallas County, Tex., to secure for her infant child a home with people of their selection; that under such authority they (Davis and wife) took said child on July 7, 1925, when it was three months and one day old, and they had made and provided for the child a good home, and were rearing it under good influences and Christian surroundings, had adopted it in the manner provided by law, and that it was to the best interest of the child that it remain in their exclusive custody, care, and control, and alleging other facts indicating that the present environment of the child was good and would likely so remain.

The trial judge who heard the case, without the aid of a jury, refused to disturb the custody of the child, declaring in the judgment rendered "that it is to the best interest of the minor, Kent Sears, Jr., and to his future welfare, that his permanent care, custody, control and possession remain with the defendants, Porter J. Davis and wife, Mrs. Annie Davis." The motion for a new trial having been overruled, and the court having been required to file its conclusions of law and findings of fact, which it did, the record was finally lodged with the Court of Civil Appeals for the Eleventh Supreme Judicial District, where, upon a hearing, the judgment of the district court was reversed, and judgment rendered in favor of the parents of the minor, giving to them the exclusive custody and control of the child. 19 S.W.(2d) 159. After the motion for rehearing had been filed in and overruled by the Court of Civil Appeals, an application for writ of error was filed in and granted by the Supreme Court. The assignments of error assail the judgment of the Court of Civil Appeals as being contrary to the law and the undisputed facts.

First assignment of error: "Since the trial court expressly found that it is to the best interest of this child for his custody to remain with his foster parents, these plaintiffs in error, and the proof amply supports that finding, the Court of Civil Appeals erred in not affirming the judgment of the trial court."

Second assignment of error: "Since the trial court expressly found that it is to the best interest of this child for his custody to remain with his foster parents, these plaintiffs in error, and the proof amply supports that finding, the Court of Civil Appeals erred in reversing the judgment of the trial court in favor of these plaintiffs in error, notwith-

standing this, on the mistaken theory that a failure to show a positive unfitness on the part of the defendants in error concludes the controversy in their favor and forecloses all inquiry as to what is to the child's best interest."

Since the findings of fact, duly filed in response to a motion to that effect by the trial judge, are not assailed as being unsupported by the testimony sufficient to justify the same, and since these findings of fact thus unassailed are binding upon the Court of Civil Appeals, and since they have been sufficiently summarized by that court in its opinion, we here adopt said summary, to wit:

"That Kent McBroom Sears was born out of wedlock on April 21, 1925; was a few hours later sent to Hope Cottage in Dallas; that on April 28, 1925, when the child was a week old, the mother signed, executed, and acknowledged an instrument in which she recited that the father of the child was Richard Jones, and authorized and empowered the Hope Cottage Association to secure for the child a home with people of their selection who might or might not adopt it; that she waived any and all liability that might accrue by virtue of her parental authority; that on July 7, 1925, said child was placed by Hope Cottage Association with Porter J. Davis and wife, Annie Davis, who on said day duly and legally adopted said child; that respondents have no natural children, have looked after and cared for said child with as much solicitude and care, and have supplied all of its wants and have lavished their affections on it as freely as if it were their natural child; that it has been with them since infancy, knows no other home or parents; that it is in an ideal home; respondents are church people, members of and attend church, and the child will be reared by them under church influence, properly educated by them; that respondents are industrious, frugal, and economical, and have accumulated property of the value of $12,000, including a home owned by them in close proximity to churches and good schools. The court further found that it would be a great injustice to the child to sever its then existing relationship, and that the best interest of the child required that it remain in the custody and control of the respondents. The court further found that the mother, at the time of the execution of said instrument, was not married, and that the father was asserting no claim to the child, and that it was in pursuance of the authority set out in said instrument that the child was placed with the respondents and by them duly and legally adopted. It was further found that plaintiffs were married about April 30, 1925, some 30 days after the birth of the child; that neither of them have ever evidenced any great concern or displayed any great affec-

tion for the child; that they have never contributed anything to its support or maintenance; that during about 15 days when the mother remained at the maternity home where the child was born, the father visited her three or four times; that plaintiffs left Dallas together and neither undertook to see the child nor to inquire concerning its welfare until about August 17, 1925, during which time neither manifested any interest in the welfare of the child; that after about two years suit was filed by plaintiffs in the district court of Dallas county, seeking to recover custody and possession of said child; that up to the time of filing of said suit, outside of two letters addressed to Hope Cottage Association, in response to which information was given that the child had been adopted by good people, neither of the plaintiffs made any inquiry concerning the child. Further findings were that plaintiffs do not own any home, that they are tenants living some three or four miles from school and churches; that they have no property other than some farming tools, implements, workstock, and about 25 head of cattle, and an unharvested grain crop, consisting of wheat and oats of an undetermined amount, and a cotton crop of about 25 acres, planted but not matured. That plaintiffs had no connection or association with said child since its birth, and there are no ties of affection existing between it and them, and that the respondents are much better qualified intellectually and morally, and better suited and equipped, for the proper rearing and educating of said child than are the plaintiffs. It was further found that to destroy or discontinue its present relationship would work great and unnecessary hardship on the child and might materially affect its future; that the child's welfare might be greatly impaired by making any change in its relationship, due to the fact that it had been and was growing up as a member of the family of respondents; that it knows no other home or parents, and it would be much to the advantage and benefit of the child to permit it to remain in the custody and control of the respondents, who were in all respects better suited and better fitted to have the care, custody, and control of said child than the plaintiffs."

The Court of Civil Appeals, in reaching its conclusion that the judgment of the trial court should be set aside and a contrary one rendered by it, does not attempt to question the sufficiency of the evidence to sustain the findings of fact, filed in the case by the trial court, in the support of the vital ultimate fact that it is to the best interest of the minor, and to its future welfare, that its permanent care, custody, control, and possession remain with the plaintiffs in error, but rests its decision upon the admitted state of the record that the defendants in error pleaded and

proved that they were the parents of the minor, and that the plaintiffs in error did not plead, and, of course, did not prove, that these parents were morally unfit to have the permanent care, custody, control, and possession of their child. In other words, the Court of Civil Appeals concludes the law of this case to be that, in the absence of pleading, with proof in support thereof, that the parents of the minor are morally unfit to have such care, custody, control, and possession they are entitled thereto, regardless of the findings of fact by the trial judge that it is to the best interest of the minor and to his future welfare that his permanent care, custody, control, and possession should remain where it has been the past five years, and where the proof shows the home, in which fate and circumstances have placed him, is not only an ideal one, at the present time, but will likely remain so. The Court of Civil Appeals has no power to render judgment contrary to that rendered by the trial court, where the evidence is sufficient to sustain that of the trial court. H. & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Stevens v. Masterson, 90 Tex. 417, 39 S. W. 292, 921.

██ Under the common law, as well as the statute law of Texas the parents have the natural right to the custody and control of their child, and, in case of the death of one parent, the surviving parent has the right to its custody. Castro v. Castellanos (Tex. Com. App.) 294 S. W. 525. But the parents' right to the custody of their child, however, is not absolute, but is subject to judicial control, when the interest of the child demands it, and must yield, where the real and permanent interest of the child demands a different disposition.

██ But the exercise of this judicial control, antagonistic to the right or control which the law gives to the parents of the minor, can only be exercised where the testimony in the case shows either the unfitness of the parents, or their incapacity, or any other condition, the legal effect of which would be to demonstrate that the best interest of the child would be subserved by giving its custody to another than the parents. As a basis for the exercise of judicial control over the minor, in the absence of pleading and proof, that the parents are unfit to have the care and custody, of their child, as in this case, there must be pleading and proof, to the effect that the parents have voluntarily relinquished their natural and statutory right to have this care and custody. There is such pleading and proof in this case, as the record clearly shows. The mother of the child, at a time when, under the facts, she had the right to make this relinquishment, the child having been born out of wedlock, though his birth was afterwards legitimized by the marriage of the parents, delivered the custody of the child to those in charge of the Hope Cottage Association, with instructions to secure for the child a home with people of their selection. This was done when the child was one week old. At the time she made this relinquishment, the mother also waived any and all liability that might accrue by virtue of her parental authority. When the child was about three months old, those in charge of the Hope Cottage Association placed it with the plaintiffs in error, since which time it has remained in their home, receiving from them every care and attention necessary to its welfare. In the meantime the parents of the child have not contributed anything to its support, care, and maintenance, nor have they had any association with the child. This situation, in which the court found the facts to be, was a direct result of the initial voluntary act of the mother. By reason of this essential act of the mother, the child has been placed in an environment, shown to be in every respect a beneficial one, and entirely disassociated from the natural care which parents ordinarily bestow upon their children. We do not attach any significance to the form taken by which this act of relinquishment is evidenced, beyond the fact that the form it did take may have justified the trial court in giving more weight to the act of the mother than might have been properly given had the act been in another and less permanent form. The instrument by which the mother evidenced her act of relinquishment is in no sense an authority authorizing any one to adopt the child. The fact that the plaintiffs in error have adopted the child, since it has been in their custody, in the manner prescribed by law, is merely an evidence of their good faith in taking charge of the child and in giving it the attention which it has received at their hands. We find nothing in the findings of fact from which the Court of Civil Appeals was justified in concluding that the testimony evidencing the act of relinquishment is untrue. Upon the contrary, all of the circumstances indicate that the trial judge was justified in finding that the mother had relinquished parental care over the child. It is further shown that, at the time the mother did so relinquish her authority, she had the exclusive right to do so. The Supreme Court in the leading case of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, 282, made this statement, which is peculiarly applicable to the facts in this case:

"Ordinarily, the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and wordly advancement may be offered in the home of another. Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and

under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon a hearing of all the facts, it is of opinion that the best interest of the child would be prompted thereby. * * *

"The law does not prohibit such a transfer, but, on the contrary, allows the child to reap the benefit thereof when it is to its interest so to do. * * *

"The parents, on the one hand, offer to take back their child to the family circle, from whence they voluntarily allowed it to be taken nearly two years since, at the tender age of three months; and, on the other hand, its foster parents insist upon its remaining, with all the privileges of an adopted child, in the home where it has been tenderly and lovingly cared for through the critical period of infancy. Two homes are thus offered the child, who is in nowise responsible for this unfortunate controversy, and has not sufficient discretion to select. We hold, as a matter of law, that it is entitled to the benefit of that home and environment which will probably best promote the interest of the infant."

In the case of State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S. W. 901, 903, it was held that the burden of proof rested upon him who sought to withhold from the parents the custody of the child to establish the fact that the best interest of the child would be subserved by withholding its possession from the parents. This burden the plaintiffs in error have fully discharged in this case, as shown by the findings of fact filed by the trial court. In that case the Supreme Court, among other things, say, quoting from Weir v. Marley, 99 Mo. 484, 12 S. W. 798, 6 L. R. A. 672:

" 'What is for the best interest of the infant? is the question upon which all cases turn at last, whatever may be said in the opinion about contracts; and the answer returned is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof. The presumptions are against it.' If this court had intended to decide that the burden of proof rested upon the parent, there was no reason why it should not have answered the question propounded, and it would not have referred the court of civil appeals to the case of Weir v. Marley, as furnishing a proper rule to guide it in deciding the issue."

We believe the burden imposed by the law upon the plaintiffs in error has been fully discharged by them. As to what was the child's best interest, notwithstanding the qualification of the natural parents, was the vital ultimate issue before the court for determination. It was the controlling issue of fact. The presumption that the parents were entitled to the custody of the child has been overturned. In State ex rel. Wood v. Deaton, supra, the court merely held that the facts did not establish with that certainty which the courts must require that the interest of child or that those of society demanded that it should be taken from the mother and continued in the possession of another. But the decision clearly indicates that facts can be established in a given case with such certainty as to require the courts to take a child from its parents and continue it in possession of others. We think this is one of the cases, and that the presumption has been overcome, since the district court here expressly found, after carefully considering the facts, that it would be to the best interest of this child for its custody to remain with the foster parents, these plaintiffs in error.

The authorities of this state, as well as those of other states, are almost uniform in holding that, in a contest for the custody of a minor, that person is entitled to such custody in whose custody the interest and welfare of the child will be best promoted. Among the authorities of this state we note the following, in addition to those already heretofore cited: Zephyr v. Miller (Tex. Civ. App.) 14 S.W.(2d) 915; Donnell v. Baker (Tex. Civ. App.) 15 S.W.(2d) 120; Jones v. Warren (Tex. Civ. App.) 300 S. W. 146; Miller v. Banks (Tex. Civ. App.) 280 S. W. 301; Cecacci v. Martelli (Tex. Civ. App.) 235 S. W. 951; Kendall v. Williams (Tex. Civ. App.) 233 S. W. 296; Dunn v. Jackson (Tex. Com. App.) 231 S. W. 351; Radicke v. Radicke (Tex. Civ. App.) 206 S. W. 964; Clark v. Hendricks (Tex. Civ. App.) 164 S. W. 57; Ball v. Smith (Tex. Civ. App.) 156 S. W. 576; Schneider v. Schwabe (Tex. Civ. App.) 143 S. W. 265; Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196; White v. Richeson (Tex. Civ. App.) 94 S. W. 202, 203.

In the language of the eminent counsel representing the plaintiffs in error: "They (the parents) are doubtless sincere in their present desire to have the child. But their wishes are not controlling. Through their own acts this new relationship has come into the child's life which they are now attempting to disrupt. It is the equitable discretion of the court which is to be exercised, and the paramount consideration is the child's interest alone. The trial judge had the opportunity to observe the parties and weigh their respective qualifications. He found that the foster parents are in every way better qualified, morally and intellectually, and are better suited and equipped, to have the rearing

of the child, and that it would be a great injustice to the child to take him from them."

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.