## HILLIARD et al. v. WATSON et ux.
### No. 6049.

Court of Civil Appeals of Texas. Texarkana.
Feb. 4, 1943.

Rehearing Denied March 4, 1943.

H. H. Taylor, of Texarkana, for appellants.

O. B. Pirkey, of New Boston, for appellees.

HALL, Justice.

This is a habeas corpus proceeding instituted by appellants, Frances Hilliard and husband, Clark Hilliard, against appellees, Gene Watson and Bess Watson, for the custody of appellants' minor child, Patricia Ann Watson, a baby girl about two years of age. The petition alleged that Patricia Ann was the daughter of Frances Hilliard by a former husband; that she was be-
ing unlawfully held by appellees who were unfit persons to have the care and custody of said minor child "because they have an adopted child of their own, not related to said minor and can not have the love for said minor that would permit them to care for and educate her in the manner that she will be cared for and educated by her own mother." Appellees answered by general denial, and further, that said minor child was delivered to them by appellant Frances Hilliard under the agreement with appellees "that if they would take and care for said child in its infancy, she would not be taken from them thereafter." Trial was before the court without a jury and resulted in judgment denying appellants' application for the custody of said minor and awarding her custody to appellees.

The facts are that appellant Frances Hilliard's first husband was a brother of appellee Gene Watson. Shortly after the birth of Patricia Ann, whose custody is here in controversy, appellant Frances Hilliard and her then husband, Billie Watson, moved into the home of appellees. Shortly thereafter, February 9, 1941, Billie Watson was killed in an accident, leaving appellant Frances penniless and expecting another child. Frances continued to live with appellees until some six weeks after the birth of her second child, Billie Jean. She left their home in August, 1941, taking Billie Jean to her (appellant's) parents' home near Harold, Texas, where she left her and went to Ft. Sill, Oklahoma, to secure work. Frances left Patricia Ann with appellees. She secured employment in the home of an Army officer at Ft. Sill. Sometime in October, 1941, Frances returned to appellees' home for the purpose of getting Patricia Ann. Appellees refused to let her have the child, and persuaded her to let them get Billie Jean from the home of Frances' parents and keep the two children together. Frances agreed and went with appellees to the home of her parents and delivered Billie Jean to them, and returned to Ft. Sill. In March, 1942, Frances came to appellees' home, got the baby Billie Jean and returned to the home of her (Frances') parents. April 1, 1942, Frances married Clark Hilliard, a sergeant stationed at Ft. Sill. After her marriage Frances wrote several letters and made a trip, in company with her husband, to Bowie County for the purpose of obtaining custody of Patricia Ann. Appellees refused to deliver the minor to appellants and this suit resulted.

■ Appellants' first point is: "The court erred in permitting the appellees to introduce evidence over appellants' objections that the little baby, Billie Jean Watson, had sores behind its ears and was emaciated when it was brought from appellant's mother's home at Harold, Texas, to Gene Watson's home in October, 1941, when, the evidence showed, that this baby had been with appellant's mother from August to October and not with appellant, who was, during that time, in Ft. Sill, Oklahoma." Testimony with respect to the physical condition of Billie Jean at the time appellees brought her to their home in October, 1941, was elicited from more than one witness. Appellants objected to this testimony by some of the witnesses, but permitted similar testimony from appellee Bess Watson without objection. This amounted to a waiver by appellants of any objectionable feature of the testimony covered by this point. Dallas Hotel Co. v. Richardson, Tex.Civ.App., 276 S.W. 765; McCormick & Ray's Texas Law of Evidence, page 22, Sec. 18. This point is overruled.

Appellants' second point is: "Under the law applicable and the evidence educed, the court erred in rendering judgment, depriving appellant, Frances Hilliard, of the custody of her baby Patricia Ann Watson, and giving the custody of said baby to appellees, Gene Watson and Bess Watson." The testimony, as usual in such cases, is highly contradictory. It was appellees' contention that appellant Frances Hilliard turned Patricia Ann over to them with the understanding that they were to keep and rear her as their own. Their testimony in this respect was corroborated by other witnesses in the community. This was strenuously denied by Frances, she claiming that her straitened circumstances resulting from the death of her husband compelled her to leave Patricia Ann with appellees so she could go in search of work. The testimony showed further that appellees had become very much attached to Patricia Ann and had cared for her with the same tenderness and affection that they would have for a child of their own. The record reflects further that appellees have custody of a 13-year old girl, not their own, whom they have cared for and reared for the past four or five years. This child and Patricia Ann are very much attached to each other. The testimony shows also that appellees, as well as appellants, are proper persons to have the care and custody of said minor.

■ The paramount fact issue in cases of this character to be decided by the trier of the facts, in this instance the trial court, is the welfare of the minor, and in whose custody its best interests will be subserved. The trial court found in the judgment of this case "that the best interests of the minor, Patricia Ann Watson, requires that she be permitted to remain with respondent defendants, Gene Watson and Bess Watson * * *." In Weir v. Marley, 98 Mo. 484, 12 S.W. 798, 801, 6 L.R.A. 672, cited with approval by the Commission of Appeals in Dunn v. Jackson, Tex.Com.App., 231 S.W. 351, it is said:

"What is for the best interest of the infant? is the question upon which all cases turn, at last, whatever may be said in the opinion about contracts; and the answer returned is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof,— the presumptions are against it."

Perhaps the leading case in this state upon the questions here involved is Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 283. After stating the facts in that case, the court concludes: "Two homes are thus offered the child, who is in no wise responsible for this unfortunate controversy, and has not sufficient discretion to select. We hold, as a matter of law, that it is entitled to the benefit of that home and environments which will probably best promote the interest of the infant. The question as to whose custody will be most beneficial to the infant is one of fact, of which this court has no jurisdiction, but which is to be determined in the first instance by the district court, upon hearing all the evidence tending to shed any light upon these two homes, and the people inhabiting them, including their entire connection with, affection for, and present and future ability to care and provide for this little girl, in order that the court may be enabled to determine, upon the whole case, the difficult question of the fact above stated."

The holding in State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, is not in conflict with above quotation from the Legate case. In Duckworth v. Thompson, 37 S.W.2d 731, the Commission of Appeals asserts that there is no conflict in above

312

two decisions, and cites with approval the quotation herein made from the Legate case. See also York v. Holt, Tex.Civ.App., 144 S.W.2d 415; Schultz v. Brown, Supt., Tex.Civ.App., 152 S.W.2d 801.

■ True, indeed, as stated above, child-custody cases present difficult issues of fact for determination. The able trial judge in the court below had the parties and witnesses before him. He could, and no doubt did, note their demeanor and many other details which can not be presented to this court by the record. We can not say that the judgment is not supported by the evidence. We must not be influenced in determining the issue raised upon appeal by our personal feelings in such cases, but must view the judgment of the trial court based upon its broad equity powers in the light of the record before us. This point is overruled.

The judgment is affirmed.