### AMOS v. SENGLEMAN et al.
### No. 11656.

Court of Civil Appeals of Texas. Galveston

Nov. 2, 1944.

Rehearing Denied Dec. 14, 1944.

Merrill & Scott, of Houston, for appellant.

J. S. Bracewell and Fentress Bracewell, both of Houston, for appellees.

MONTEITH, Chief Justice.

This is an appeal from a judgment in a habeas corpus proceeding brought by appellant, Roberta Marilyn Amos, against Dr. W. A. Sengleman for the custody of Paul Millard Amos, appellant's infant son about 18 months of age. J. Earl Braden and his wife, Marjorie Braden, intervened in the proceeding, alleging that the child had been placed in their care and custody by a Mrs. Wilma Halliburton, who had assured them that its father and mother had relinquished all interest and claim in it and had agreed that she might adopt it, but that circumstances had arisen which would prevent her adoption of the child, and that they, intervenors, had accepted the care and custody of the child, relying upon these representations. They alleged that they had no children of their own and that they had become tenderly devoted to the child; that J. Earl Braden had, for many years, held a responsible position, and that they were in every way able, willing and anxious to continue in the care, control and custody of the child and, when it was legally possible to do so, to effect its legal adoption.

Upon a hearing before the court without a jury, judgment was rendered awarding the custody of the child to intervenors, subject to the right of appellant to visit the child twice each week.

It is undisputed in the record that appellant was unmarried and in poor financial condition at the time of the birth of Paul

Millard Amos. The father of the child lived in Missouri and was in the armed services. Prior to the time of the child's birth appellant had engaged Dr. C. Elmer Frey and his wife, who conducted a nursery for small children, to secure a suitable person to adopt her child, with the understanding that the name of the person in whose custody the child was placed was not to be made known to appellant. Appellant, who had represented herself to be the wife of Eugene Allen, signed in blank a waiver and relinquishment, transferring all parental authority and the full control and exclusive custody of the child. She also procured and transmitted to Mrs. Frey a similar waiver from the child's father, Eugene Allen.

She testified that she had told Dr. Frey that she did not want to know who had the baby and that she had signed the waiver in blank for the reason that she did not want to know the name of the party who was taking the child for adoption.

Dr. Frey testified that appellant had executed an authorization to the hospital to release the child to him, and that on March 13, 1943, the day after its birth, he took the child to his home and delivered it to Mrs. Halliburton.

Appellant admitted that she did not know that Mrs. Halliburton had taken her child for adoption. She testified that all she was interested in was securing some good Christian people to take the child and raise him.

Due to a change in her family making it impossible for her to adopt the child, Mrs. Halliburton requested Dr. W. A. Sengleman, who was the family physician of both herself and the Bradens, to secure a suitable family who were desirous of taking a child for rearing and adoption. After making an investigation of the Braden family, Mrs. Halliburton turned the child over to intervenors, J. Earl Braden and his wife, Marjorié F. Braden.

The record shows that appellant was 20 years of age at the time the child was born. She was at the time of the trial employed by the Brown Shipyards at a weekly salary of $42.23 a week. At the time of the trial she was living with a friend in a garage apartment in Houston, consisting of one room and a bath. It had no kitchen and she and the friend with whom she occupied the apartment had their meals at outside places. She had made arrangements with a Mrs. Richard A. Cook to assist her in caring for the child.

The controlling questions to be decided by the trier of the facts in an action of this character, in this instance the trial court, is the welfare of the child, and as to whose custody will be most beneficial to the infant. Legate v. Legate, 87 Tex. 248, 28 S.W. 281; Duckworth v. Thompson, Tex.Com.App., 37 S.W.2d 731; Hilliard v. Watson, Tex.Civ.App., 170 S.W. 2d 310; Davis v. Sears, Tex.Com.App., 35 S.W.2d 99; Tunnell v. Reeves, Tex. Com.App., 35 S.W.2d 707.

In the case of Davis v. Sears, supra, 35 S.W.2d 99, 102, in which the facts are similar in all material respects to those in the instant case, the Commission of Appeals in its opinion says:

"The Supreme Court in the leading case of Legate v. Legate, 87 Tex. 248, 28 S.W. 281, 282, made this statement, which is peculiarly applicable to the facts in this case:

"'Ordinarily, the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another. Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon a hearing of all the facts, it is of opinion that the best interest of the child will be prompted thereby.'"

In the case of Legate v. Legate, supra [87 Tex. 248, 28 S.W. 283], the Supreme Court further held that, "Two homes are thus offered the child, who is in no wise responsible for this unfortunate controversy, and has no sufficient discretion to select. We hold, as a matter of law, that it is entitled to the benefit of that home and environment which will probably best promote the interest of the infant. [And] the question as to whose custody will be most beneficial to the infant is one of fact,

of which this court has no jurisdiction, but which is to be determined in the first instance by the district court, upon hearing all of the evidence tending to shed any light upon these two homes, and the people inhabiting them, including their entire connection with, affection for, and present and future ability to care and provide for this little girl, in order that the court may be enabled to determine, upon the whole case, the difficult question of the fact above stated."

The holding in the case of Legate v. Legate, supra, was followed by the Commission of Appeals in the case of Duckworth v. Thompson et ux., 37 S.W.2d 731.

The trial court in the instant case found in the judgment rendered that it was to the best interest of the child that it be continued in the care, custody and control of intervenors, J. Earl Braden and his wife, Marjorie F. Braden, subject to the right of appellant to see such child at reasonable times.

The latest expression by our courts on the precise question presented in this appeal is the opinion in the case of Hilliard et al. v. Watson et ux., Tex.Civ.App., 170 S.W.2d 310, writ of error refused, wherein the court held, that in habeas corpus proceedings the paramount fact issue to be decided by the trier of the facts is the welfare of the minor and in whose custody its best interest will be subserved.

In the instant case it is undisputed that the appellant, prior to the birth of the child, consulted with Dr. Frey with reference to a suitable person for the adoption of the child. The child was taken at its birth by Dr. Frey, after both its mother and father had signed a waiver and relinquishment to its custody, and after the mother had stated that she did not want to know the name of the person in whose custody the child had been placed.

The trial court conducted a full hearing on the facts of the case, in which each side was allowed a wide latitude in the introduction of evidence, before the entering of his order awarding the custody of the child to intervenors.

 Under the well established rule that in a nonjury trial every reasonable inference supported by the record will be drawn in favor of the trial court's judgment on appeal therefrom, Gulf Coast Chemical Co. v. Hopkins, Tex.Civ.App., 145 S.W.2d 928, Miller et al. v. State, Tex.Civ.App., 155 S.W.2d 1012, the judgment of the trial court, read in the light of the testimony, must be construed as an affirmative finding by the court that the welfare of the infant, Paul Millard Amos, would best be subserved by being continued in the care, custody and control of intervenors, J. Earl Braden and his wife, Marjorie F. Braden, subject to the right of appellant to see the child at times provided for in the court's order.

These conclusions require an affirmance of the trial court's judgment; it will be so ordered.

Affirmed.