## HUSTACE v. BLACK.

### No. 4440.

Court of Civil Appeals of Texas. El Paso. Aug. 30, 1945.

Rehearing Denied Sept. 28, 1945.

Abner S. Lipscomb, of El Paso (Robert E. Cunningham, of El Paso, on the brief), for appellant.

R. B. Redic, of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of El Paso County, Texas, Forty-first Judicial District. It was a habeas corpus proceeding involving the custody of the minor Wilton Black, Jr. Wilton Black, Sr., the father of the minor, sought a writ of habeas corpus to obtain the custody of his son from Mrs. Catherine M. Hustace, the maternal grandmother. Trial was before the court without a jury and judgment was rendered awarding the custody to Wilton Black, Sr. Mrs. Hustace has perfected this appeal. Mrs. Hustace will be hereinafter designated as appellant and Mr. Black as appellee.

On motion of appellee, the court filed findings of fact and conclusions of law,

which are deemed to clearly delineate the issues arising and their disposition. The same are here set forth in full.

"Findings of Fact.

"I. This is an action by petitioner, in which he seeks to recover the care, custody and control of his child from the respondent, in a habeas corpus proceeding. The petitioner Wilton Black, Sr., is a resident of Baton Rouge, La. and is a member of the Armed Forces of the United States, stationed at or near Baton Rouge, La., and is the sole surviving parent of the minor child Wilton Black, Jr. The mother, Gladys Martha Black, died in El Paso, Texas, July 6th, 1944. The respondent, Mrs. Catherine Hustace, is a permanent resident and has her domicile in Honolulu, Hawaii, but has actually resided in El Paso, Texas, since a short time prior to the birth of Wilton Black, Jr., a period of about one year. The respondent is the mother of the deceased Gladys Martha Black and the maternal grandmother of the minor child Wilton Black, Jr.

"II. Upon the death of the mother of Wilton Black, Jr., the petitioner placed said child in the actual care, custody and control of the respondent herein. The respondent is devoted to her grandson and has given him all of the love, affection and care of which a grandmother is capable, and has provided for the physical care of said minor child in a most competent and efficient manner, and if the father of said child had seen fit to leave said child with the respondent for the duration of the War, as he originally intended, the respondent would have continued her excellent care and attention to her grandson.

"III. The petitioner came to El Paso, Texas, following the birth of his son and prior to the death of his wife. In placing his infant son in the custody of respondent, petitioner did not abandon or transfer to the respondent his legal custody and right to his minor son, but merely the actual and physical custody. The petitioner at all times has provided for the support of his minor son by making an allotment to respondent under the Soldier's Dependency Act.

"All parties understood very clearly and definitely that upon the discharge of the petitioner from the United States Army, the actual and physical custody of the child would be restored to him.

"IV. The respondent, up until the hearing, kept said child in El Paso, Texas, the place where she acquired the actual and physical custody of said child. The respondent planned to return to her permanent home in Honolulu, Hawaii, and intended to take with her her grandson, the son of this petitioner. Petitioner at first indicated, in a letter to respondent, that such plan would be satisfactory. Subsequent thereto the petitioner changed his mind and decided that he did not wish his minor son to be taken to Honolulu, Hawaii, and came to El Paso and instituted this proceeding.

"V. The petitioner has made arrangements, in the event he recovers his minor son in this proceeding, to place said child in the actual custody of Mr. and Mrs. Robert L. Black, an uncle and aunt of the petitioner, who reside in Baton Rouge, La., for the duration of the War or until petitioner is discharged from the Service.

"VI. The father, Wilton Black, Sr., is a proper person to have the legal care, custody and control of his minor child Wilton Black, Jr.

"The respondent, Mrs. Catherine Hustace, is a proper person to have the actual and physical custody and control of her grandson Wilton Black, Jr.

"Mr. and Mrs. Robert L. Black, the uncle and aunt of the petitioner, are proper persons to have the actual care, custody and control of the minor child Wilton Black, Jr.

"VII. The best interest of the child, taking into consideration its well-being for the duration of the War or of the military service of its father only, would be best served by leaving said minor child in the custody of its maternal grandmother, Mrs. Catherine Hustace, respondent herein.

"The best interest of the child, taking into consideration the future and beyond the duration of the War or of the military service of the petitioner, would be best served by awarding the care, custody and control of said minor child to its father the petitioner herein.

"The petitioner herein has by no act or omission forfeited any right which he has in his minor son. His military service does not deprive him of his right to select the person who should have the physical and actual care of his minor son during the time his military duties prevent him

from giving his minor son his personal care and attention.

## "Conclusions of Law.

"I. The paramount fact issue in habeas corpus proceedings involving the custody of a minor child is the welfare of the minor child and in whose custody its best interests will be subserved. Hilliard v. Watson [Tex.Civ.App.], 170 S.W.2d 310, error refused.

"In determining what is the best welfare of a child of tender years, the Court must consider not only food, clothing, shelter, care, education. and environment, but must also bear in mind that every child is entitled to the love, nurture and training of its father. Campbell v. Campbell [19 Wash.2d 410], 143 P.2d 534.

"II. In the absence of any showing that the father is unfit to, or disqualified from, properly discharging his parental duties, he has, as against the maternal grandmother, a superior right to the custody and control of his infant child, which no Court should disregard.

"While a Court is bound also to regard the permanent interest and welfare of the child, it is presumed that its interest and welfare will be best promoted by awarding its custody and control to its own father until it is made to appear that the father is no longer worthy of the trust. State ex rel. Wood v. Deaton [93 Tex. 243], 54 S.W. 901; McCarroll v. Lakey [Tex.Civ.App.], 157 S.W.2d 963, error refused.

"A father should not be deprived of the custody of his own child unless there are grave and weighty reasons therefor. [State ex rel.] Peterson v. Sanders [215 Minn. 502], 10 N.W.2d 387.

"III. There is nothing in the record of this case tending in the least to indicate the unfitness of the father, nor any disqualification in him to perform his parental duties. There is no showing that he is unworthy of the trust. There are no grave or weighty reasons why he should be deprived of the custody of his child. This case comes squarely within the foregoing principles of law announced in State ex rel. Wood v. Deaton, McCarroll v. Lakey, and Peterson v. Sanders.

"IV. The grandmother must accept the inevitable. She will, no doubt, suffer grief and heartaches at the giving up of her grandson. She will make her own sorrow less, however, if she accepts the situation gracefully, with a realization that she has done an appreciated good service for her grandson, as have many good grandparents before her. All realize that the grandmother's custody must terminate before long. It is best that the change come now. State ex rel. Herniman v. Markson [187 Minn. 176], 244 N.W. 687.

"Upon the foregoing Findings of Fact and Conclusions of Law, the custody of Wilton Black, Jr. is awarded to his father, Wilton Black, Sr."

In the judgment there is set forth the following finding of fact: "and that the best interests of the minor, Wilton Black, Jr. require that he be given over to the absolute and complete custody of his father, Wilton Black, the Petitioner herein, and that the father, Wilton Black, Sr., is entitled to the immediate custody of said child. That said father has secured a proper and suitable home for his son for the duration with Mr. and Mrs. Robt. L. Black, an uncle and aunt of Petitioner in Baton Rouge, La., and should be permitted to take said child to said home. That he has provided an aunt, Miss Ollie Black, a registered nurse, to transport said child, and that she is a fit and proper person for said mission. That said disposition of this case and the placing of said infant in said home will best subserve the true interests of this child and be the most beneficial solution of this case for said infant."

Appellant asserts that the judgment under the findings of fact should have been in her favor. This contention is based on the first paragraph of Finding of Fact No. VII in substance that, taking into consideration the welfare of the minor for the duration of the war only, its welfare would be best subserved by leaving it with appellant. The finding must be construed in connection with paragraph two thereof to the effect that taking into consideration the welfare of the child beyond the duration of the war, its welfare would be best served by awarding the child to its father. In construing this finding, consideration must be given to the fact the court found that appellant and appellee were each fit and suitable persons for the custody of the child and the arrangements made by appellee in the event the child were awarded to him, were suitable to insure its proper care. Further, that appellant had stated in her pleading that if she were permitted to take the child to Honolulu and the father was discharged from the army, she

would deliver it to him. Worthy of consideration, too, is the fact that appellant contemplated removing the child to Honolulu and there delivering it to the father upon his discharge from the army.

We think, taken as a whole, the finding of fact relied upon means that while temporary advantages might accrue to the child from appellant's continued custody until appellee was discharged from the military service, on consideration of the child's welfare as a whole it was best that the father immediately assume full discharge of the duties that nature and the law of the land impose upon him.

█ The issue was the control of the present custody of this child. Determinative of this issue was the best interest and welfare of the child. Hilliard v. Watson, Tex.Civ.App., 170 S.W.2d 310, writ refused.

█ If the father survived the peril of war, his was the duty to support and educate this minor. This duty was a continuing one from the birth of the child to the·time it reached its majority. The nurture and care of this child are and were his responsibility. It may have been thought with reason that the sooner he assumed full and absolute control of the nurture and care of his son, the better in the long run for the son. After weighing the advantages as to the custody of the maternal grandmother and by the father, the trial court found that the advantages accruing by custody of the father were of greater weight.

█ Appellee has not in his brief attacked the finding that the best interest of the minor, taking into consideration its custody while the father was in the military service, was to be awarded to appellant. Wilton Black, Jr., will be affected more than any other person by the judgment rendered herein. In view of the state's relationship to him and his paramount right in the matter, it is thought appropriate to review this finding in the light of the evidence. The minor is about one year of age, a normal child in every respect. No criticism can be justly made as to appellant's care of him. She is experienced in the rearing and care of children. From the evidence, she is the mother of eleven children, ten sons and one daughter, the daughter being the mother of the minor. These ten sons have been well educated and most of them have become useful and respected citizens. The rest seem to be on the high road to success. On the other hand, appellee proposes to entrust the actual care of his son to Mr. and Mrs. Robert L. Black, residents of Baton Rouge, Louisiana. Robert Black, uncle of appellee, is the employee of a railroad company, holding a responsible position. He and his wife have an adopted child seven years of age whom they reared from the time she was five days old. They have a comfortable home. Their foster child attends Sunday school and their home is a Christian home.

When the trial court entered this judgment it was not, we think, contemplated that the war should last for a great period of time. It was not contemplated that appellee's discharge from the military service would be many years in the future. The only thing contemplated was, we think, that it was more probable that the physical welfare of the minor might be best served by the custody of appellant. The only basis for this we can find in the evidence is that the child has so far thrived under the custody of appellant and that her close relationship and affection give assurance of the continuance of this capable care. Many people no doubt are qualified to give proper care and nurture to a normal boy one year of age. The evidence seems to indicate that Mr. and Mrs. Robert Black are so qualified and are willing to do so. The probabilities are that if Mr. and Mrs. Black have the possession of the minor, appellee will have a better opportunity to visit and see him. When he is discharged from the army, to reclaim the custody of his son, a trip to Honolulu will not be necessary.

However, the finding is not deemed on an ultimate issue. Hence, it is not controlling here. The contention is overruled that the trial court should on the findings have entered judgment for appellant.

Appellant attacked Finding of Fact No. III in substance that in placing his son with appellant, appellee did not abandon or transfer to her his legal custody and right to his minor son, but merely the actual and physical custody. The last paragraph of the finding, we think, reflects the facts as to what transpired between appellee and appellant at the time appellant assumed the actual physical control of the child. It is to the effect that all parties understood that appellant was to care for the child until appellee was discharged from the army.

A contract by a parent in and of its own force can not transfer the custody of a child. No doubt at the time appellee made this arrangement for the care of his son, it was a wise one and no doubt appeared to him for the very best. After he made this arrangement, he made an allotment for the support of his son to appellant under the Soldier's Dependency Act, 37 U.S.C.A. § 201 et seq. Appellant, it is fair to assume we think, received and collected this allotment for the support of the child. The findings and evidence disclose that appellant and appellee have each displayed a most tender solicitude for the welfare of this motherless baby. There is nothing in the record that in any way tends to reflect on the character of either party. Neither party in the testimony reflects in any way upon the other. This controversy seems to have arisen over the opposing views of appellant and appellee as to the removal of the child to Honolulu. Appellee at first assented to the removal, but later withdrew such assent. Each party seems to recognize that the other has a tender solicitude and affection for this child. Each, as it should be, seems to have a high regard and respect for the other.

The agreement found in the last paragraph of Finding No. III certainly made appellant's possession of the child lawful, at least up to the time of the demand of appellee for the surrender of that possession. If appellee did surrender the custody of the child, such surrender was much more limited than the cases of Legate v. Legate, 87 Tex. 248, 28 S.W. 281, and Dunn v. Jackson, Tex.Com.App., 231 S.W. 351. In the findings, the trial court cites McCarroll v. Lakey, Tex.Civ.App., 157 S.W.2d 963. In that case the father seemed to have never parted voluntarily with the custody. There, on a showing of changed condition rendering it to their best interest, the children were restored to the custody of the father.

Where a parent has parted with the custody of a child and seeks to regain custody thereof and is suitable for the custody, he is presumed or it is presumed that his custody is for the best interests of the minor unless it appears from a preponderance of the evidence that the welfare of the child would be best subserved by denying him such custody. Legate v. Legate, supra; State v. Deaton, 93 Tex. 243, 54 S.W. 901; Dunn v. Jackson, supra. Stated in another way, the proposition is that there is a presumption of fact that where a parent is suitable for the custody of a child, the welfare of the child is best subserved by awarding it to such parent against any other than the other parent. Under the conditions named in the preceding proposition, this is a rebuttable presumption. There can be no question of the correctness of the trial court's conclusion of Law No. II where it is sought to take the custody of the child from the parent or where a parent seeks to recover the possession of the child of which he has been unlawfully deprived. In a case where he seeks to recover custody against one whose custody was lawful in inception, then the burden is upon the one seeking to retain the custody to show that his continued custody best subserves the welfare of the child and not that the parent is unfit for the custody.

Stress of circumstances practically compelled appellee to entrust his child to appellant. In no way has he defaulted in any respect in his duty as parent. At all times he has exhibited care and solicitude for the welfare of his child. Appellant, it is true, has at all times kept him informed as to the child. In the evidence there is nothing that would warrant even the weakest inference that she has in any way failed in the trust assumed as to her deceased daughter's child. It may be that Conclusion of Law No. II is in a sense incorrect. However, it is thought that there is no preponderance of the evidence in this case showing that the best interests of this child demand the continued custody of appellant. The burden was upon her to establish this. State v. Deaton, supra.

In Conclusion No. III appears the following:

"There are no grave or weighty reasons why he should be deprived of the custody of his child."

It is clear that if the welfare of the child demanded, it would be a grave and weighty reason for depriving him of the custody. Why this finding, if the only issue was as to the worthiness of the father? We do not feel warranted in reversing the judgment of the trial court for a possibly erroneous conclusion of law unless it appears that same probably led to an erroneous result. Construing the findings of fact and conclusions of law as a whole, we think

that it clearly appears it did not. Appellee has not delayed a long time in instituting these proceedings. It is his right under the evidence, we think, to prevent a situation arising that might justly and lawfully prevent him from regaining the custody of his child. Even if he has parted with same in the sense as contended by appellant, she is not entitled to retain the custody unless it appears from a preponderance of the evidence that the child's welfare would be best subserved by her continued custody. I have been unable to find a case where a father has been denied the right to control the care and custody of a son on the showing made here. It is thought that to justify a judgment in favor of appellant the testimony should have had a greater weight.

The language of Conclusion of Law No. I almost literally follows the quotation in State v. Deaton from the opinion in State v. Richardson, 40 N.H. 272. The trial court no doubt meant the words "until it is made to appear that the father is no longer worthy of the trust" to convey the meaning until it appears that the best interests of the child demand another disposition. It is thought that such was the construction of them in State v. Deaton. In a sense, a father not disqualified may be said not deserving of the custody of a minor where its best interests require another custody. It is not thought that the learned trial judge either misunderstood or misapplied the legal rules announced in Legate v. Legate, supra, State v. Deaton, supra, or Dunn v. Jackson, supra, but dispose of this child in accordance with what was found for its best interests.

It is ordered that the judgment of the trial court be affirmed.

McGILL, Justice (concurring).

The trial court could have properly rendered no judgment consistent with his findings of fact other than the judgment he did render. Findings incorporated in No. VII to effect that considering the child's well-being for the duration of the war or of the military service of his father only, his best interest would be served by leaving him in the custody of appellant; but that considering the future beyond the duration of the war or the military service of his father, his best interest would be served by awarding his custody to his father, are not findings on material ultimate issues, but are evidentiary only and not controlling. The controlling finding is that incorporated in the judgment, i. e. that the best interests of the minor require that he be given over to the complete custody of his father. Under Findings II and III, there can be no doubt but that appellee surrendered custody of his son to appellant within the meaning of the rule enunciated in Dunn v. Jackson, Tex. Com.App., 231 S.W. 351, 353, that:

"Where he has surrendered this custody to a third person, who performs the duties incumbent upon him as the natural guardian, a new condition is created which inures to the benefit of the child. The law does not prohibit such a transfer by the parent, but, on the contrary, allows the child to reap the benefit therefrom, and upon a habeas corpus proceeding by the parent to regain custody of the child the paramount interest of the child becomes the dominant issue. Legate v. Legate, 87 Tex. 248, 28 S.W. 281."

It is apparent from these findings that it was contemplated by both parties that appellant should perform the duties encumbent upon appellee as the father and natural guardian of the infant, at least until appellee should be discharged from the United States Army—an indefinite period of time. Every reason underlying the rule of Dunn v. Jackson exists in this case. Here, as there, a new condition, a new relationship was created by the father's voluntary agreement which inures to the benefit of this child. That the father made an allotment for the support of his child during this period did not change the fact that custody was voluntarily surrendered by him to appellant.

Therefore, the other rule enunciated in Dunn v. Jackson: "the burden of proof rested with the respondent to establish facts necessary to overcome the legal presumption in favor of the parent's custody. It does not require, however, that respondent prove the parent disqualified by misconduct or misfortune; but the burden resting upon respondent is met by establishing that the best interests of the child demand that she remain in the custody of respondent." is applicable.

The second paragraph of the court's Conclusion of Law No. II, if applied to the facts of this case, is in conflict with this rule. It is substantially in accord with

a portion of the opinion in State v. Richardson, 40 N.H. 275, quoted in State v. Deaton, 93 Tex. 243, 54 S.W. 901, 902, but the holding in the Deaton case was based on a fact finding that:

"I find that the interest and welfare of the child, Austin Dillard, *will be as well, if not better*, subserved by remaining with the respondent and his wife, who have adopted it as their own, than if his possession and custody were given to his mother, the applicant herein." (Italics mine.)

This was part of the facts which the Supreme Court said in State v. Deaton "do not establish with that certainty which the courts must require that the interest of the child, Austin Dillard, or of society itself, demands that he shall be taken from his mother and continued in the possession of another."

Here the trial court's finding incorporated in its judgment that the best interest of the child will be subserved by awarding its custody to its father is unequivocal and is amply supported by the evidence. It is not attacked by appellant. Does the court's conclusion of law above referred to necessarily lead to the inevitable conclusion that in determining that all important issue of fact, the trial court considered only the qualifications of the father to have the custody of his child? If so, a reversal would necessarily follow unless the evidence is insufficient to overcome the legal presumption enunciated in Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 6 L.R.A. 672, and cited with approval in Legate v. Legate, 87 Tex. 248, 28 S.W. 281, State v. Deaton, supra, and in many other cases by the Supreme Court:

"That the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him who so avers devolves the burden of proof,— the presumptions are against it." [99 Mo. 484, 12 S.W. 801.]

In my opinion, the evidence would have supported a finding by the trial court that the best interests of the child would be subserved by awarding its custody to its grandmother. It is elementary that the trial court is vested with a broad discretion in determining this question. The grandmother had cared for the infant since its birth. She was a closer blood relative to him than his father's uncle and his wife who were to have the actual custody of the child until the father should be discharged from the United States Army. I do not wish to be understood as intimating that in my opinion the trial court should have made a finding that the child's best interest would have been subserved by awarding its custody to its grandmother. He probably would and should be influenced by the demeanor of the witnesses and their manner of testifying. I do think that the evidence contained in the record before us is sufficient to sustain such finding had he so found. Therefore, the question above indicated is presented. True, appellant has not raised it specifically by any of her points. In my opinion, it is fundamental.

If standing alone, the conclusion in the second paragraph of II above referred to would be susceptible of no other interpretation than that the court in determining the issue as to what would be for the best interest of the minor considered the qualifications of his father alone; but in Conclusion No. III, the court says:

"There are no grave or weighty reasons why he (appellee) should be deprived of the custody of his child."

Considering this conclusion with the second paragraph of Conclusion No. II, it does not affirmatively appear that the court erroneously applied his conclusion of law in arriving at the finding of fact incorporated in the judgment. The court having found as a fact that appellee was a proper person to have the custody of his child (Finding No. VI), the conclusion that there were no grave or weighty reasons why he should be deprived of his custody would have been unnecessary and meaningless if the court deemed the father's qualifications the only material fact to consider in determining the controlling issue as to the child's best interest. It follows that the court may have considered other relevant matters than the father's qualifications in arriving at his finding that the best interest of the child required that his custody be awarded to his father. In support of the judgment we must presume that he did so.

I concur in affirmance of the judgment.