Dolores Lopez **BARRIE** et vir, Appellants,

v.

Ida **COSTELLO** et vir, Appellees.

No. 11379.

Court of Civil Appeals of Texas.

Austin.

March 30, 1966.

Rehearing Denied April 27, 1966.

Runge, Marschall, Hall & McLaughlin, Pat Hall, San Angelo, for appellants.

William E. Davenport, San Angelo, for appellees.

HUGHES, Justice.

This case, as it reaches us, is a contest over the custody of Carla Yvonne Lopez, born December 21, 1956, the daughter of appellant, Dolores Lopez Barrie, whose maternal grandmother is appellee, Ida Costello.

The custody issue was submitted to a jury which answered (1) Dolores Barrie is not a fit and proper person to have the custody and control of Carla (2) Ida Costello and her husband are fit and proper persons to have the care, custody and control of Carla (3) It is to the best interest of Carla that she be in the care, custody and control of Victor Costello, Jr. and Carla's grandmother, Ida Costello (4) It is not to the best interest of Carla that she be in the care, custody and control of her mother, Dolores Barrie (5) Dolores Barrie did not voluntarily abandon and desert Carla for a period of two years prior to March 8, 1962 (6) the jury answered the following issue "she did." "Do you find from a preponderance of the evidence that for a period of two years before March 8, 1962, Dolores Barrie did not contribute to the support of Carla Lopez" commensurate with her ability.

Upon this verdict, judgment was rendered awarding the care, custody and control of Carla to Mr. and Mrs. Costello.

Appellants' first point is that the court erred in awarding custody and control of Carla to appellees because it was neither pleaded nor proved that Carla was a dependent and neglected child within the terms of Arts. 2330-2337, inc., Vernon's Ann.Tex.Civ.St.

In support of this point appellants cite DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, Poss v. Anderson, Tex.Civ.App., 188 S.W.2d 726, Amarillo, writ ref., w. o. m., Oldfield v. Lester, Tex.Civ.App., 188 S.W.2d 722, Waco, n. w. h., and Daniel v. Watson, Tex.Civ.App., 249 S.W.2d 281, Waco, n. w. h.

■ We will not discuss these cases for the reason that it is obviously not the law that custody of minor children can only be litigated within the limitations of these statutes. To so hold would deny to all except residents of the county where the child was the authority to institute a suit for its custody. Art. 2331, supra. It would also have the effect of being in conflict with a multitude of custody cases where the issue of the child being dependent or neglected

was not present. Our experience is that parents who neglect their children and permit them to become dependent as defined in the above mentioned statutes usually do not fight for their custody. It is also our experience that in pure custody cases each party tries to show how much more he could do for the child than the other party could do. This is but to say that in child custody cases it is the best interests of the child which is involved and litigated, and these cases may or not present issues of statutory neglect or dependency of the child. We quote from Davis v. Sears, 35 S.W.2d 99, Tex.Comm. of Appeals, a case which did not cite or discuss the above statutes, as follows:

> "Under the common law, as well as the statute law of Texas the parents have the natural right to the custody and control of their child, and, in case of the death of one parent, the surviving parent has the right to its custody. Castro v. Castellanos (Tex.Com.App.) 294 S.W. 525. But the parents' right to the custody of their child, however, is not absolute, but is subject to judicial control, when the interest of the child demands it, and must yield, where the real and permanent interest of the child demands a different disposition.
>
>    \*     \*     \*     \*     \*     \*
>
> As a basis for the exercise of judicial control over the minor, in the absence of pleading and proof, that the parents are unfit to have the care and custody, of their child, as in this case, there must be pleading and proof, to the effect that the parents have voluntarily relinquished their natural and statutory right to have this care and custody.
>
>    \*     \*     \*     \*     \*     \*
>
> The authorities of this state, as well as those of other states, are almost uniform in holding that, in a contest for the custody of a minor, that person is entitled to such custody in whose custody the interest and welfare of the child will be best promoted."

See Scozzari v. Curtis, Tex.Civ.App., 398 S.W.2d 819, Fort Worth, n. w. h.

Appellants' first point is overruled.

Appellants' second point is that there was no pleading or proof to sustain the findings of the jury that it was for the best interest of Carla that she be placed in the custody of appellees and not in the custody of appellants, and that the evidence in this respect was "insufficient."

       Appellants filed this suit which was in the nature of a habeas corpus proceeding but in which specific facts were alleged. Appellees denied these facts and alleged that appellants were unfit persons to have the custody of Carla and that, conversely, they, appellees, were fit persons to retain her custody and to be awarded her permanent custody. Facts supporting these allegations were alleged. Appellees also alleged that Mrs. Barrie had voluntarily relinquished permanent custody of Carla to Mrs. Costello. We find the pleadings sufficient.

The evidence in this case is very lengthy, repetitious and presents a sorry spectacle of bitterness and controversy between a mother and daughter over the custody of the granddaughter, Carla.

There is testimony that Mrs. Barrie was first married to a Robert Lopez, to which marriage Carla was born. This marriage was dissolved by divorce in 1957 in Albuquerque, N. M. The record does not disclose any further information about Mr. Lopez. After the divorce, Mrs. Barrie came to San Angelo, with the baby, and lived with her mother and Mr. Costello, where she attended business school for about two and one half months. She then went to Las Cruces, N. M. and stayed with her mother's sister. She stayed there a short while and left her baby there and went to Los Angeles to look for work. In Los Angeles she stayed with her mother's aunt. After three months she returned to Las Cruces for Carla and returned to Los Angeles. In 1958 Mrs. Barrie left Los

Angeles and went to Hot Springs (Truth or Consequences) N. M. where she stayed with her mother's sister. She stayed in this town for about three months and then went to Alamogordo, N. M. where she and Carla stayed with her mother's sister. This stay was for three weeks. She and Carla left Alamogordo for Miami, Florida with one Don Melton, with whom Mrs. Barrie lived without ceremonial marriage for the next three or four years. There is testimony that Don Melton, during this time, had a living wife.

Mrs. Barrie telephoned Mrs. Costello from Florida in 1958 and we quote Mrs. Costello's testimony concerning this conversation and immediate subsequent events:

"A She told me that she could no longer take care of Carla and that there was no place where she could put her, and for me to please come and get her; and I told her I wanted to be sure she was going to let me have her because I did not want to make a trip, and I wanted her to be sure and make up her mind that she was giving her to me.

Q That was about the 5th of August, of what year?

A Of '58.

Q Now, did you go to Florida to get Carla at that time?

A Yes, sir.

Q And what condition did you find Carla in when you found her?

A Carla was staying with a neighbor, and the child was all full of sores and she looked undernourished, and she didn't have any clothes.

Q What was Dolores' words to you when she handed the child to you?

A She picked up the child and she gave her to me, and she said, 'Ida, she's all yours.'"

Carla has lived with Mr. and Mrs. Costello since she was brought from Florida in 1958. There is no question but that Carla has been well cared for and that she has had a happy life in the Costello home. There were six children besides Carla in the home, four being the Costello's own and two being Mrs. Costello's by a previous marriage which was dissolved by death. Mrs. Costello was 48 years of age at the time of trial. The Costello family is a Christian, church going, school going family.

There is a conflict in the testimony as to whether Mrs. Barrie contributed to the support of Carla during the years she stayed with her grandmother.

In February 1963, Mrs. Barrie and Don Melton parted ways. A month later she met Bill Barrie, and they were married in August 1963.

Mr. Barrie appears to be a good business man. His earnings are sufficient to support his wife and Carla and he is willing to do so. The record shows, however, that he has been married twice before and that he is presently under a probated sentence for grand larceny committed in the State of California.

In June of 1964, the Costellos and Carla went to Miami for the wedding of their son Victor. The Barries also lived in Miami. While in Miami there were the usual wedding parties and, it seems an unusual amount of drinking, except Mrs. Costello did not drink. The Costellos stayed with the Barries until the night of the wedding when a row caused them to leave in the middle of the night and seek shelter at a motel. Mrs. Costello testified that Mr. Barrie literally kicked her out of his home. The next day Mrs. Costello called her daughter, Mrs. Barrie, and asked if she wanted to come and tell them goodbye as they were returning to San Angelo. Mrs. Barrie, when she learned where her mother was staying, preferred kidnaping charges against her mother and stepfather, had them arrested and incarcerated. After

three hearings before Florida Judges, the charges were dismissed and the Costellos were permitted to return to Texas with Carla.

Witnesses who testified to the good standing, reputation and character of the Costellos and that they were fit and proper persons to be awarded custody of Carla were a neighbor, Mrs. Deane Webb, Edd B. Keyes, County Judge of Tom Green County, Clay Hudson, a business man, Jerry Acosta, a neighbor, Homer Goode, Chief Deputy Sheriff of Tom Green County, Reverend Roy Lowe, Pastor of Fort Concho Baptist Church, Gerald Black, Deputy Sheriff of Tom Green County and former District Supervisor for the Texas Liquor Control Board, Aurelia Acosta, a neighbor, Daniel Aleman, Pastor of the First Latin American Baptist Church and Cecil Turner, Tom Green County Sheriff.

■ It is our opinion that the evidence, partially summarized above, supports the findings of the jury which are challenged under these points.

It is never easy or pleasant to deprive a mother of her children and seldom, if ever, are we sure that we are right when this is done. It is not our view that a mother should never be forgiven for past mistakes or that she should never be permitted to reshape her life so as to claim rights of motherhood which she has lost. We believe that the effort made by Mrs. Barrie to recover custody of Carla is commendable, although some of the means employed were not. This effort, in our opinion, demonstrates that Mrs. Barrie realizes her responsibilities as a mother and realizes the magnitude of her loss. The jury, upon adequate evidence, has found that other rights have intervened and that Mrs. Barrie has lost her right to claim her own. The jury, under the evidence, had the right to make this decision. We respect it and uphold it. Accordingly, we overrule the point under discussion.

Appellants' last point is that there is no evidence and that the evidence is "insuffi-

cient" to support the jury finding that Mrs. Barrie was not a fit and proper person to be awarded the custody of Carla. We overrule this point. The material facts bearing on this issue have been stated above.

We affirm the judgment of the trial court.

Affirmed.