Raymond **AYALA** et ux., Appellants,

v.

Paul F. **WALDNER**, Director, Catholic Family and Children's Service et al., Appellees.

No. 15276.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 4, 1968.

Elizabeth Joyce Cox, Raul A. Gonzales, Jr., Houston, for appellants.

Charles Kipple, Houston, Saccomanno, Clegg & Martin, Houston, of counsel, for appellees.

PEDEN, Justice.

The natural parents of Bernard Ayala, age 4, filed this appeal from the trial court's denial of their petition for a writ of habeas corpus by which they sought custody of Bernard. After a hearing, the trial judge awarded his custody to Mr. Paul Waldner, Director of Catholic Family and Children's Service, and made findings of fact, which we summarize:

1. Petitioners are natural parents of Yolanda, 7, Diane, 6, Vincent, 5, Bernard, 4, and Charlene, 3.

2. In July, 1965, when Bernard was desperately ill, petitioners took him to Texas Children's Hospital as a charity patient; they had no funds at the time.

3. They voluntarily executed a "custody agreement and medical consent" in favor of respondents. Its contents are set out in this opinion.

4. Bernard weighed only 17 pounds in July, 1965, although he was two and a half years old; he was suffering from severe malnutrition, unable to perform motor tasks or anything a normal child of one year could do.

5. Earlier, in October, 1964, when Bernard was twenty months old, he had been admitted to the same hospital weighing 14 pounds and ten ounces, the normal weight of a child about eight months old,

and was in a malnourished state like that in which he was found in July of 1965.

6. While in the hospital in late 1964, Bernard gained eight pounds in twenty-six days. He weighed 23 pounds when returned to petitioners in 1964, but he had lost six of them by July, 1965. He was retarded both mentally and physically because of neglect and lack of food, not because of any disease.

7. In July, 1967, after being in exclusive custody of respondents for two years, he weighed 34 pounds and could walk, talk and care for himself.

8. At age three, in April, 1966, Bernard's mental age was one year and ten months. Eight months later, while in his present environment, his mental age was two years and eight months, but he still has a marginal mental retardation.

9. Since late in 1965, Bernard has been in a foster home provided by respondents, a duly licensed child placing agency. Petitioners' request that Bernard be returned home has been denied by respondents, who fear he would revert to the condition in which he was found twice before.

10. Mr. Ayala does not know the ages or the whereabouts of his four children of his former marriage. He suffers from epileptic seizures, one of which recently caused him to drive his car into a building. He works from noon to midnight six days a week at a drive-in grocery and beer stand, where his gross salary is $100.00 per week.

11. Bernard's mental and physical problems resulted from petitioners' inability to provide for his minimum physical, medical and emotional needs and from their neglect. At the present time they are unable to provide the medical care he needs if he is to continue to progress toward normalcy.

12. Bernard's return to petitioners would be detrimental to his physical, mental and emotional state. He would probably revert to his condition of October, 1964, and July, 1965, which was caused by inability and neglect of petitioners to furnish his minimum needs, and it would be to his best interest for him to remain in the custody of respondent, Paul F. Waldner, Director of Catholic Family and Children's Service.

The custody agreement mentioned in item 3. above is set out in full:

"I do hereby request the Catholic Family and Children's Service to take care of, and I do hereby entrust to its care, my children, ___Bernard Ayala___ and in consideration of the acceptance of said children by the Catholic Family and Children's Service and the expenses thereby incurred for their care, I do hereby agree to pay to said agency the sum of $ 1.00 each and every week, in advance, beginning ___7–27–65___ and continuing without further notice or demand upon me from the Catholic Family and Children's Service until my said children are returned to me, or their support is otherwise provided for. I further agree to provide (or to pay for) the necessary clothing for my children.

"I do hereby request the Catholic Family and Children's Service to furnish necessary medical care to my children, and authorize the Catholic Family and Children's Service, by its duly authorized agent, to consent to the administration of anesthetic and to performance of any emergency operation found to be necessary for my children's welfare upon competent medical advice, and I do hereby agree to pay for said medical care.

"I further agree to observe the rules and regulations of the Catholic Family and Children's Service and not remove my children from its care, or the care of its agents, except at the request of the Catholic Family and Children's

Service or after reasonable notice of my intention to do so."

/s/ Mrs. Amparo E. Ayala

/s/ Raymond M. Ayala

Appellants assert as points of error that the trial court erred in denying custody to them because:

1. no evidence the natural parents are unfit;

2. insufficient evidence to rebut the presumption that the child's best interest is served by awarding his custody to his natural parents;

3. natural parents are entitled to custody unless shown to be disqualified;

4. no evidence as to conditions in the foster home;

5. trial court did not enforce the custody agreement;

6. no evidence that best interest of child would be served by award of custody to the agency;

7. court's ruling makes the child dependent on charity and is contrary to public policy; and

8. there had been a judicial determination that the child was not a dependent and neglected one.

We have carefully examined the entire record of this case, and we hold that the evidence is sufficient to support the trial court's findings.

In determining custody matters Texas courts are primarily concerned with the best interests of the child. There is a presumption that his interests are best served by award of his custody to his natural parents. The burden of proof on the issue of his best interests is on the one seeking to deprive the natural parents of custody. The trial court's judgment in determining the best interests of the child and in awarding its custody in ac-

cordance with this determination should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him. Herrera v. Herrera, 409 S.W.2d 395 (Tex.Sup.1966). In both the Herrera case and Mumma v. Aguirre, 364 S.W.2d 220 (1963), the Supreme Court of Texas has declined to restore custody of a child to a natural parent found to be a fit person to have such custody when to do so would disrupt a good family relationship to which the child had become accustomed. We feel that the facts of this case as found by the trial court present circumstances at least as compelling as those shown in the Herrera and Mumma cases we have mentioned. We hold that the trial judge did not abuse his discretion.

Although there is very little evidence in the record as to the conditions in the Ayalas' home, and there is even less as to the conditions in the foster home where Bernard has thus far been placed by Catholic Family and Children's Service, the circumstances shown in the evidence and the conclusions drawn from them by experts in the fields of medicine, psychology and social work support the finding of the trial judge that at present it is to Bernard's best interest that he stay in the agency's custody. On two occasions while in custody of his natural parents, Bernard's state of malnutrition became so marked that his mental and bone development still lag, according to the uncontroverted evidence. On both occasions he responded dramatically to treatment provided by respondents. If the expert witnesses were correct in their conclusions, it was vital to Bernard that his care be placed in others.

Appellants assert that the trial judge made no finding that Bernard's natural parents are unfit to have his custody and that there is no evidence of probative force to support such a finding. We hold that such findings are not necessary to support the judgment, but that the evidence is sufficient to support such a finding and that we would imply it

from those findings which were made if it were necessary. De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944); Rule 299, Texas Rules of Civil Procedure; Herrera v. Herrera, *supra.* We overrule appellants' first three points.

■ Appellants say the court's decision constitutes error because there is no evidence as to the foster parents' home life, affection for Bernard or their ability to provide for him. We overrule this fourth point. Custody was awarded to Mr. Waldner. As director of a licensed child placing agency he has the responsibility of looking out for Bernard's best interests. The evidence supports the trial court's findings that he is doing this well and that Bernard's parents have seriously neglected him; the law requires proof of nothing more.

■ Appellants contend that the trial court erred in failing to award custody of Bernard to them by enforcing the Custody Agreement and Medical Consent. It was held in Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894), that when a voluntary transfer of custody of a child is sought to be enforced it is to the best interests of the child that the court will look, adding: "The attempted transfer is not a contract, and cannot be enforced as such, because neither the child nor its custody was a subject-matter of contract." We overrule this, the appellants' fifth point of error, and for reasons already stated we overrule their sixth point.

■ Appellants' seventh point asserts that the court's awarding of custody to the agency was error because in effect it makes Bernard dependent on the public for support and is contrary to public policy. No authority has been cited in support of this theory, and we have found none. We overrule the seventh point. We hold that the public policy of this state favors the assumption by charitable agencies of the care of children whose best interests will thus be served.

■ Appellants' eighth point asserts that it was error for the court to fail to return Bernard to his parents since there had been a judicial determination that he was not a dependent and neglected child.

A petition filed by the agency asking that Bernard be declared to be a dependent and neglected child had earlier been denied after a hearing; there was no appeal from that order. Our Supreme Court held in Hendricks v. Curry, 401 S.W.2d 796 (1966), that the issues of dependency and custody are severable. We hold that the outcome of the dependency case is not determinative of this custody suit.

The judgment of the Trial Court is affirmed.