**Ex parte Belva PARTON.**

**No. 6112.**

Court of Civil Appeals of Texas, El Paso.

May 20, 1970.

Glen Sutherland, El Paso, for appellant.

Peticolas, Luscombe & Stephens, John B. Luscombe, Jr., El Paso, for appellee.

OPINION

FRASER, Chief Justice.

This is an appeal from a decision of the District Court of El Paso County, Texas, in which the trial court refused to grant a writ of habeas corpus as filed by Belva Parton, petitioner, seeking to obtain custody of her daughter, Marti M. Morrison, from the custody and care of the paternal aunt, Karen K. Fine, respondent. The parties will hereinafter be referred to as appellant and appellee.

The facts appear to be as follows: Samuel J. Morrison married appellant, Belva Parton, at El Paso, Texas in April of 1961. Of this marriage one child, Marti M. Morrison (the subject of this lawsuit) was born. The time of her birth was October 28, 1961. At the time of the birth of Marti, her father, who was a sergeant in the United States Army, was stationed overseas in Korea. After his departure for Korea, Marti and her mother, the appellant, moved to the home of appellant's mother in Colorado. Because of the behavior of Marti's mother, her father, Sergeant Samuel Morrison, came to Colorado and, in November, 1962, when Marti was just a little over one year old, he obtained a divorce from Marti's mother and assumed custody of Marti. It appears from the record that up until the date of the trial on the habeas corpus procedure, the appellant-mother had not seen Marti since she was seven months old, when the mother signed an affidavit relinquishing the custody of the child. After signing the affidavit, the appellant went with a Mr. Rock, with whom she had been having a close relationship, to New Orleans, which relationship, it appears from the record, was ground for the divorce obtained by Sergeant Morrison when he returned from Korea. Appellant later broke off her relationship with Mr. Rock and

married a Dale Anderson in Denver, Colorado, in 1964. This marriage also ended in divorce in 1968. By this time appellant had given birth to two more children, one by Mr. Rock and one by her husband, Anderson. About ten days after she divorced Mr. Anderson, she married Roy Parton, who is her present husband, and accompanied by her two children went with him to live in Illinois, where they now reside. Appellant testified that she probably would not know Marti if she saw her, nor does her husband, Mr. Parton, know Marti, nor has Marti ever been to their home in Illinois, nor does Marti know their two children and has had no contact with them. Appellant admits that appellee and her husband are good and fine people.

While the above events were going on, Samuel Morrison returned from overseas, as stated above, obtained his divorce and took physical custody of Marti in November, 1962. He and Marti returned to El Paso where he was stationed two and a half years, during which time Marti was a frequent guest and visitor with appellee and her husband. Samuel Morrison was then transferred to Germany, where he developed a terminal cancer and was sent to Letterman Hospital in California. In June, 1967 he returned to El Paso. Marti was with her father during this time. In June 1967, Marti and her father came to live with her father's sister—the appellee—and her family, and Marti has lived with them ever since. Samuel Morrision died in May, 1968. He had named appellee trustee for Marti in his will; and in subsequent proceedings in the El Paso County Court, appellee was named guardian of the person and estate of Marti M. Morrison. Again we must take notice that there was no contact by the child's mother during any of this time, until early October, 1969, when she telephoned and said she wanted to take her daughter back with her to Illinois. This suit followed shortly thereafter.

The record shows that during the time Marti has lived with her aunt, the appellee,

her grades in school have improved; in fact, she has never had lower than a "B". She calls Mr. and Mrs. Fine "Mommy" and "Daddy" and calls the Fine's parents "Grandma and Grandpa". The record shows that she has been treated as one of the family along with the Fine's two children, and has always gone with them on camping and vacation trips, such as Disneyland, etc. There is much evidence in the record that Marti's teachers and school counselor, appellee's neighbors, and the retired minister of the church they attend, all testify to the stability of the appellee's home and the close and enduring relationship of Marti with appellee and her family and the security she found. Appellee has been a school teacher for nine years and her husband is manager of a Furr's food store where he has been employed for ten years. In addition to all this testimony, the court interviewed Marti in chambers. The record shows that it was Marti's custom to stop by often when she was going down the hall of the school building and either wave or go in and talk with her teachers or counselor. All the evidence is that she is a good student and a very happy and well-adjusted child. She plays with neighborhood children and gets along well with them. All of this must be borne in mind in connection with the fact that her own natural mother had not seen her since she was seven months old, and at the time of the trial Marti was eight years old.

█ It has long been the law in Texas, as held beginning with Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894) that while a natural mother has paramount right to custody of the child over any other person, such "right" must yield when it conflicts with what is in the best interest and welfare of the child, for this is the prime consideration of any child custody case. This case was decided in 1894, and the law has not been appreciably changed since then. Along with other facts found by the original trial court in the divorce action brought by Samuel Morrison, the court found that appellant was not a proper person to have

**484**

Marti's custody. In Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, the court held that a natural parent is not entitled, as a matter of law, to the custody of her child on the mere showing that such parent is now a proper person to have custody, and cited many cases in support thereof. The law of Texas is that the best interests of the child are paramount to all other considerations when a custody matter is being litigated; as, for example, it has been said that there exists a presumption that the best interests of the child or children will be subserved by · awarding them to the natural parent, but there are numberless cases holding that this is a rebuttable presumption. There are many cases which have gone farther and held that it is not necessary that the outsider be called upon to prove that the natural parent is disqualified by immorality or misfortune, and that such theory applies where there has been a voluntary relinquishment or abandonment of custody. Casteel v. Mandel, 415 S.W.2d 512 (Tex.Civ.App., n. w. h.); Dunn v. Jackson, 231 S.W. 351 (Tex.Com.App.); Ayala v. Waldner, 426 S.W.2d 628 (Tex. Civ.App., n. w. h.); Tiller v. Villasenor, 426 S.W.2d 257 (Tex.Civ.App., n. w. h.); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787; Richardson v. Althoff, 415 S.W.2d 520 (Tex.Civ.App., n. w. h.).

We have carefully read the statement of facts and the rest of the record, and find that Marti is now, and has been for over two years, living a very happy and joyous life with her aunt and uncle, whom she calls "Mommy" and "Daddy", is doing well in school, and is faithful in her attendance at church and Sunday School. The trial court found no reason for disrupting this happy relationship, bulwarked as it was by testimony of school teachers and neighbors. We agree.

The decision of the trial court is accordingly affirmed.